IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAY ALIX,<br><br>              *Plaintiff*,<br><br>     v.<br><br>MCKINSEY & CO., INC.; MCKINSEY HOLDINGS, INC.; MCKINSEY & COMPANY INC. UNITED STATES; MCKINSEY RECOVERY & TRANSFORMATION SERVICES U.S., LLC; DOMINIC BARTON; KEVIN CARMODY; JON GARCIA; SETH GOLDSTROM; ALISON PROSHAN; ROBERT STERNFELS; and JARED YERIAN,<br><br>              *Defendants.* | Case No. 18-cv-04141 (JMF) |

**THE MCKINSEY DEFENDANTS' REPLY CONCERNING THE EFFECTIVENESS OF PLAINTIFF'S VOLUNTARY DISMISSAL OF CLAIMS AND ALL DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR RULE 54(b) CERTIFICATION AND OTHER CONTINGENT RELIEF**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ......................................................................................................................... 3

I.    The Voluntary Dismissal Was Effective.......................................................................... 3

    A.    Alix's Voluntary Dismissal Was Effective Because It Dismissed All
        Remaining Claims in this Action .......................................................................... 3

    B.    The Voluntary Dismissal Would Have Been Effective Even If It Listed
        Fewer Than All Remaining Claims ....................................................................... 6

II.   The Relief Sought in Alix's Certification Motion Should Be Denied.............................. 8

    A.    The Court Should Deny Alix's Motion for Rule 54(b) Certification ................... 9

        1.    The RICO and State-Law Claims Are Closely Related........................... 10

        2.    The Equities Do Not Support Alix's Certification Request..................... 12

    B.    Alix's Motion for Leave to Amend Should Be Denied ....................................... 15

    C.    Alix's Request for an Order of Preclusion Should Be Denied ............................ 18

CONCLUSION..................................................................................................................... 19

# TABLE OF AUTHORITIES

CASES

*Adrian v. Yorktown,*
   210 F. App'x 131 (2d Cir. 2006) ............................................................9

*Analect LLC v. Fifth Third Bancorp,*
   380 F. App'x 54 (2d Cir. 2010) .............................................................5

*Aspen Ford, Inc. v. Ford Motor Co.,*
   No. 01 Civ. 4677, 2007 WL 2219477 (E.D.N.Y. July 30, 2007) ...........................14

*Azkour v. Haouzi,*
   No. 11 Civ. 5780, 2013 WL 3972462 (S.D.N.Y. Aug. 1, 2013) ...........................6

*Banco Central del Paraguay v. Paraguay Humanitarian Found., Inc.,*
   No. 01 Civ. 9649, 2008 WL 2951681 (S.D.N.Y. July 28, 2008) ....................14, 15

*Baxter v. Atl. Care Main Pomona Hosp.,*
   No. 13 Civ. 7876, 2015 WL 715012 (D.N.J. Feb. 19, 2015)...................................16

*Benton v. Vinson, Elkins, Weems & Searls,*
   255 F.2d 299 (2d Cir. 1958).................................................................8

*Black Diamond Sportswear, Inc. v. Black Diamond Equip., Ltd.,*
   No. 03 Civ. 278, 2006 WL 2585103 (D. Vt. July 12, 2006) ..................................14

*Burgos v. City of N.Y.,*
   No. 18 Civ. 1150, 2019 WL 1299461 (S.D.N.Y. Mar. 21, 2019) ...........................6

*Certain Underwriters at Lloyd's v. Milberg LLP,*
   No. 08 Civ. 7522, 2010 WL 1838886 (S.D.N.Y. Nov. 24, 2009) .................4, 5, 14

*Chappelle v. Beacon Commc'ns Corp.,*
   84 F.3d 652 (2d Cir. 1996).........................................................5, 9, 13, 14

*Da Hing, 68 Inc. v. Golden Wok Ohio, LLC,*
   No. 07 Civ. 318, 2008 WL 11417189 (D.N.M. Feb. 20, 2008)...............................16

*Devino v. Duncan,*
   215 F. Supp. 2d 414 (S.D.N.Y. 2002)......................................................8

*EMI Music Mktg. v. Avatar Records, Inc.,*
   317 F. Supp. 2d 412 (S.D.N.Y. 2004)......................................................10

*Freeman v. Rice,*
   399 F. App'x 540 (11th Cir. 2010) .........................................................18

*Great Am. Ins. Co. of N.Y. v. Day*,
    No. 12 Civ. 2295, 2013 WL 254563 (D. Md. Jan. 22, 2013) ................................................16

*Harriscom Svenska AB v. Harris Corp.*,
    947 F.2d 627 (2d Cir. 1991)............................................................................................9, 10, 15

*Harvey Aluminum, Inc. v. Am. Cyanamid Co.*,
    203 F.2d 105 (2d Cir. 1953)...........................................................................................................7

*Hatch v. District of Columbia*,
    111 F.3d 962 (D.C. Cir. 1997) ....................................................................................................17

*In re Blech Sec. Litig.*,
    No. 94 Civ. 7696, 1997 WL 20833 (S.D.N.Y. Jan. 21, 1997)..........................................10, 12

*In re Vivendi Universal, S.A., Secs. Litig.*,
    No. 02 Civ. 5571, 2012 WL 362028 (S.D.N.Y. Feb. 6, 2012) ................................................15

*Citizens Accord, Inc. v. Rochester*,
    235 F.3d 126 (2d Cir. 2000)........................................................................................................13

*Mitsubishi Aircraft Int'l, Inc. v. Brady*,
    780 F.2d 1199 (5th Cir. 1986) ....................................................................................................17

*Nemaizer v. Baker*,
    793 F.2d 58 (2d Cir. 1986)........................................................................................................1, 8

*Nix v. Office of Comm'r of Baseball*,
    No. 17 Civ. 1241, 2017 WL 2889503 (S.D.N.Y. July 6, 2017) ..................................................8

*Novick v. AXA Network, LLC*,
    642 F.3d 304 (2d Cir. 2011)....................................................................................9, 10, 12, 13

*QFA Royalties, LLC v. ZT Invs., LLC*,
    No. 17 Civ. 507, 2018 WL 4095114 (D. Colo. Aug. 28, 2018) ..................................................3

*Rabbi Jacob Joseph Sch. v. Province of Mendoza*,
    425 F.3d 207 (2d Cir. 2005).................................................................................................13, 14

*Rabbi Jacob Joseph Sch. v. Province of Mendoza*,
    No. 04 Civ. 9102, 2005 U.S. Dist. LEXIS 13512 (S.D.N.Y. July 7, 2005) .............................14

*Rest. Teams Int'l, Inc. v. Dominion Capital Fund Ltd.*,
    No. 99 Civ. 4138, 2002 WL 1603150 (S.D.N.Y. July 18, 2002) ........................................16, 17

*Ritchie Capital Mgmt., LLC v. Coventry First LLC*,
    No. 07 Civ. 3494, 2016 WL 6952248 (S.D.N.Y. Nov. 28, 2016) ...............................................8

*Rothstein v. UBS AG*,
    772 F. Supp. 2d 511 (S.D.N.Y. 2011)..................................................................18

*S.E.C. v. Gonzalez de Castilla*,
    184 F. Supp. 2d 365 (S.D.N.Y. 2002)................................................................18

*Seidman v. Chobani, LLC*,
    No. 14 Civ. 4050, 2016 WL 1271066 (S.D.N.Y. Mar. 29, 2016) ...........................8

*Seippel v. Jenkens & Gilchrist, P.C.*,
    No. 03 Civ. 6942, 2004 U.S. Dist. LEXIS 24566 (S.D.N.Y. Dec. 3, 2004)............................4

*State Treasurer v. Barry*,
    168 F.3d 8 (11th Cir. 1999) .................................................................................14

*Sylvan Beach v. Koch*,
    140 F.2d 852 (8th Cir. 1944) ...............................................................................19

*TADCO Constr. Grp. Corp. v. Dormitory Auth. of N.Y.*,
    No. 08 Civ. 73, 2012 WL 3011735 (E.D.N.Y. July 23, 2012) ...............................12

*Thomas v. Ramapo Coll. of N.J.*,
    No. 10 Civ. 3898, 2011 WL 3206448 (D.N.J. July 27, 2011)........................16, 17

*U.S. D.I.D. Corp. v. Windstream Commc'ns, Inc.*,
    775 F.3d 128 (2d Cir. 2014)................................................................................19

*United States v. L-3 Commc'ns EOTech, Inc.*,
    921 F.3d 11 (2d Cir. 2019)..................................................................................16

*Wakefield v. Northern Telecom, Inc.*,
    769 F.2d 109 (2d Cir. 1985).................................................................................7

*Wilson-Cook Med., Inc. v. Wilson*,
    942 F.2d 247 (4th Cir. 1991) .............................................................................3, 4

*Youngbloods v. BMG Music*,
    No. 07 Civ. 2394, 2011 WL 43510 (S.D.N.Y. Jan. 6, 2011).................................18

*Youssef v. Tishman*,
    744 F.3d 821 (2d Cir. 2014).................................................................................19

## STATUTES AND RULES

18 U.S.C. § 152.........................................................................................................12

18 U.S.C. § 1343.......................................................................................................12

Fed. R. Civ. P. 15 ........................................................................................... *passim*

Fed. R. Civ. P. 41(a)...................................................................................................... *passim*

Fed. R. Civ. P. 41(d) .........................................................................................................17

Fed. R. Civ. P. 54(b) .................................................................................................. *passim*

Fed. R. Civ. P. 60(b) ..................................................................................................*passim*

**OTHER AUTHORITIES**

8 JAMES W. MOORE, ET AL., MOORE'S FEDERAL PRACTICE – CIVIL § 41.21[1]..............................3

Defendants McKinsey & Co., Inc., McKinsey Holdings, Inc., McKinsey & Company Inc. United States, and McKinsey Recovery & Transformation Services U.S., LLC (collectively, the "McKinsey Defendants") respectfully submit this memorandum (a) in reply to the Supplemental Memorandum of Law (Dkt. 122) concerning the effectiveness of Jay Alix's ("Alix") September 3, 2019 notice of voluntary dismissal (the "Voluntary Dismissal"), pursuant to Rule 41(a)(1)(A)(i), of the state-law claims asserted in the Amended Complaint (the "State-Law Claims"), and (b) in opposition (in which Defendants Dominic Barton, Kevin Carmody, Jon Garcia, Seth Goldstrom, Alison Proshan, Robert Sternfels, and Jared Yerian join) to Alix's Motion for a Rule 54(b) Certification and Contingent Motion for Leave to Amend or Entry of Order of Preclusion (Dkt. 124) (the "Certification Motion").

## PRELIMINARY STATEMENT

Alix's dual filings are a convoluted attempt to undo the consequences of his decision to voluntarily dismiss his State-Law Claims without prejudice.  In his Supplemental Memorandum of Law, Alix argues that the Voluntary Dismissal he filed violated Rule 41(a) and was never effective.  In his Certification Motion, Alix further tries to un-ring the proverbial bell by moving for a belated Rule 54(b) certification, leave to amend his dismissed RICO claims in order to replead his dismissed State-Law Claims, and an order precluding the refiling of the State-Law Claims in federal court (but not state court).  Alix seeks this unusual relief because vacatur under Rule 60(b) is unavailable to him, as it cannot be used to correct "an attorney's failure to evaluate carefully the legal consequences of a chosen course of action."  *Nemaizer v. Baker*, 793 F.2d 58, 62 (2d Cir. 1986).  As explained below, Alix's Voluntary Dismissal remains in place and his Certification Motion should be denied.

*First*, Alix's Voluntary Dismissal was effective upon filing because it dismissed all the then-live claims in this action.  It is well established that a plaintiff can file a Rule 41(a)

voluntary dismissal notice, as was done here, to dismiss all the claims remaining in an action after other claims have been dismissed with prejudice, even without a final judgment on those other claims.  The split of authority addressing whether Rule 41(a) can be used to dismiss fewer than all live claims against a defendant is thus irrelevant here.  (*See infra* at Section I.A.)

*Second*, even if the Court needed to resolve whether a Rule 41(a) dismissal can be used to dismiss some but not all claims, the prevailing view in this District, advanced by Alix himself a month ago (before his change of heart) as "the better reasoned view," is that "Rule 41(a)(1)(A)(i) permits voluntary withdrawal of some but not all individual claims without prejudice."  (Dkt. 107.)  (*See infra* at Section I.B.)

*Third*, Alix's request that this Court enter judgment for Defendants on his RICO claims pursuant to Rule 54(b) should be rejected, irrespective of whether the Voluntary Dismissal Notice was effective.  The RICO and State-Law Claims are closely related in terms of law and fact, and the equities clearly disfavor piecemeal adjudication here.  Indeed, Alix's request is an attempt to circumvent the Second Circuit's rule against claim-splitting and its admonishment that, unless Alix abandons his State-Law Claims with prejudice, an appeal of his RICO claims would be improper.  (*See infra* at Section II.A.)

*Finally*, Alix's contingent requests to amend his complaint, or for an order of preclusion, should be denied.  Defendants have no objection to Alix's State-Law Claims proceeding before this Court; however, Alix cannot avoid the consequences of his Voluntary Dismissal by seeking amendment in this action.  The Voluntary Dismissal nullified the State-Law Claims as if they never had been filed.  In the event Alix wishes to pursue those claims they should be refiled in a new case.  (*See infra* at Sections II.B-C.)

## ARGUMENT

### I.    The Voluntary Dismissal Was Effective

#### A.    Alix's Voluntary Dismissal Was Effective Because It Dismissed All Remaining Claims in this Action

Alix's primary argument is that because the text of Rule 41(a) refers to dismissal of an "action," *see* Fed. R. Civ. P. 41(a), the rule cannot be used to dismiss fewer than all claims asserted against a particular defendant.   Alix's contention misses the point; as even the authorities Alix cites acknowledge, "[w]hen some of the claims against a defendant have previously been dismissed by court order, the plaintiff may voluntarily dismiss the remaining ones because the claims remaining after a partial dismissal are deemed to comprise the entire action as against that defendant for Rule 41(a)(1)(A)(i) purposes."   8 James W. Moore, et al., *Moore's Federal Practice – Civil* § 41.21[1]; *see also, e.g.*, *QFA Royalties, LLC v. ZT Invs., LLC*, No. 17 Civ. 507, 2018 WL 4095114, at *3 (D. Colo. Aug. 28, 2018) (acknowledging the Tenth Circuit's "strict view of the words 'an action,'" but deciding that, "[b]ecause the Court's summary judgment ruling … has resolved Claim VI, the Rule 41 Motion [to dismiss Counts I through V] is procedurally appropriate in that it resolves all outstanding claims").   This is exactly what the Voluntary Dismissal did: it dismissed without prejudice every claim not previously dismissed by the Court with prejudice.   As such, it constituted a dismissal of the entire "action" for purposes of Rule 41(a).

The Fourth Circuit's decision in *Wilson-Cook Medical, Inc. v. Wilson* is directly on point. 942 F.2d 247, 251 (4th Cir. 1991).   There, the court upheld a notice of voluntary dismissal that did not list a count that had been dismissed previously by the district court because "the counts remaining after the partial dismissal then comprised the entire action for Rule 41(a)(1)(i) purposes."   *Id.* at 251.   In attempting to limit *Wilson*, Alix posits that the Rule 41 notice there

was valid because it dismissed all claims over which the district court had "retained jurisdiction." (Dkt. 122 at 7.)  Alix thus argues that *Wilson* does not apply because Alix's Voluntary Dismissal did not purport to dismiss the already-dismissed RICO claims.  But Alix misreads *Wilson*.  The Fourth Circuit considered whether the voluntary dismissal there was effective, despite not listing certain *non-dismissed* claims that were to be transferred to a different court, and determined that the omission was immaterial.  *Wilson*, 942 F.2d at 251 & n.3.  The *Wilson* court then separately determined that the notice was effective despite omitting a claim that had been previously dismissed by the district court.  *Id.* at 252-3.

Obviously, once a court has dismissed a claim with prejudice—as this Court did with respect to the RICO claims—a plaintiff cannot purport to dismiss it again, especially without prejudice.  *E.g.*, *id* at 253 (notice of voluntary dismissal without prejudice "applied only to those claims still remaining part of the action"); *Seippel v. Jenkens & Gilchrist, P.C.*, No. 03 Civ. 6942, 2004 U.S. Dist. LEXIS 24566, at *8 n.18 (S.D.N.Y. Dec. 3, 2004) ("Those claims having been dismissed by my Order already, there would be nothing for the Seippels to voluntarily dismiss.").  Because a voluntary dismissal of all non-dismissed claims is a dismissal of the "action" for Rule 41(a) purposes, the notice is effective whether it lists the non-dismissed claims specifically or generally says "all claims." (Dkt. 122 at 7).  The voluntary dismissal in *Milberg*, for example, was effective even though it listed only the remaining claims, just like the Voluntary Dismissal in this case.  *See Certain Underwriters at Lloyd's v. Milberg LLP*, No. 08 Civ. 7522, 2010 WL 1838886, at *1 (S.D.N.Y. Nov. 24, 2009).

Alix does not cite any case holding that Rule 41(a) cannot be used to dismiss all remaining (non-dismissed) claims in an action.  Instead, he focuses on whether and to what extent the Court retained jurisdiction over the already-dismissed RICO claims.  But that question

has nothing to do with what constitutes an "action" under Rule 41(a) or the effectiveness of a voluntary dismissal of all remaining, non-dismissed claims.  Indeed, in the very case that Alix cites for the proposition that a court "retains jurisdiction until it renders a final judgment" (Dkt. 122 at 6), the court notes that "[a]fter the Court dismissed most of the claims," the plaintiff "voluntarily dismissed its remaining claims."  *Milberg*, 2010 WL 1838886, at *1.  Further, Alix's argument contradicts the authorities upon which he relies.  Although Alix acknowledges that even those courts that construe "action" to mean all claims against a particular defendant allow Rule 41(a) dismissals against some defendants but not others (Dkt. 122 at 3), his jurisdictional argument would apply equally to those instances, as a dismissal of fewer than all defendants does not, in the normal course, result in a final judgment.  *See* Fed. R. Civ. P. 54(b), 58.  Simply put, the question of whether a court retains jurisdiction over already-dismissed claims has no bearing on the effect of Rule 41(a)'s provisions divesting the court of jurisdiction over the remaining live claims upon the filing of a voluntary notice of dismissal.

The Second Circuit's jurisprudence on interlocutory appeals following a with-prejudice voluntary dismissal of remaining claims lends further support to the proposition that a Rule 41(a) notice purporting to dismiss remaining claims is effective.  *See, e.g.*, *Chappelle v. Beacon Commc'ns Corp.*, 84 F.3d 652, 653-54 (2d Cir. 1996) ("[W]e have allowed a plaintiff to appeal an adverse ruling disposing of fewer than all of its claims following the plaintiff's voluntary relinquishment of its remaining claims with prejudice."); *Analect LLC v. Fifth Third Bancorp*, 380 F. App'x 54, 55 (2d Cir. 2010) (permitting appeal where appellant "dismissed *with* prejudice those of its claims that survived summary judgment before filing this appeal").  Those decisions implicitly sanction the effectiveness of a Rule 41(a) voluntary dismissal of all remaining claims.[1]

---

[1] Alix's claim that the McKinsey Defendants' position on the impact of the Rule 41(a) dismissal is "contradictory," in that the McKinsey Defendants are claiming, on the one hand, that the Voluntary Dismissal dismissed the "action"

**B.    The Voluntary Dismissal Would Have Been Effective Even If It Listed Fewer Than All Remaining Claims**

Because the Voluntary Dismissal dismissed every claim that had not been dismissed with prejudice already by this Court, it is not necessary for this Court to decide whether a Rule 41(a) dismissal notice can dismiss some, but not all, claims in an action.  As Alix acknowledged both in his September 3, 2019 letter and in his brief, there is a split of authority as to whether Rule 41(a) permits dismissal of fewer than all claims (*see* Dkt. 107; Dkt. 122 at 3-5.)  Although the Second Circuit has not yet decided this issue, the weight of authority in this District—and the better-reasoned view under applicable Second Circuit case law—holds that it does.  Thus, to the extent the Court reaches this question, it should find that the Voluntary Dismissal notice was effective to dismiss Alix's State-Law Claims.

Just one month ago, Alix argued to this Court that the decisions in this District that have permitted Rule 41(a) voluntary dismissals of fewer than all claims represented the "better reasoned view." (Dkt. 107 (citing *Burgos v. City of N.Y.*, No. 18 Civ. 1150, 2019 WL 1299461, at *2 n.4 (S.D.N.Y. Mar. 21, 2019) (following "the numerous other courts in this Circuit that have interpreted Rule 41(a)(1)(A) to permit the withdrawal of individual claims"); *Azkour v. Haouzi*, No. 11 Civ. 5780, 2013 WL 3972462, at *3 (S.D.N.Y. Aug. 1, 2013) ("[T]he Court joins other courts in this Circuit in interpreting Rule 41(a)(1)(A) as permitting the withdrawal of individual claims.").)  The McKinsey Defendants agree.  Alix does not even attempt to distinguish these authorities and now reverses course with no explanation other than that these cases "are unpersuasive."  (Dkt. 122 at 5.)

The view that Alix has now adopted—that Rule 41(a) prohibits dismissals of individual

under Rule 41(a), but, on the other hand, that there is no right to appeal (*see* Dkt. 122 at 9), has no merit.  The dismissal of the State-Law Claims *without prejudice* pursuant to Rule 41(a) means there is no final *appealable* judgment, notwithstanding the fact that the dismissal terminated the action.

claims but not dismissals of all claims against a particular defendant—relies on an unreasonably restrictive interpretation of the term "action" in Rule 41(a).  The only instance in which the Second Circuit applied such a strict interpretation of that term was in *Harvey Aluminum, Inc. v. American Cyanamid Co.* a decision that Alix acknowledges has been widely criticized and that the Second Circuit has since discredited.  203 F.2d 105, 108 (2d Cir. 1953) (observing that Rule 41(a) "provides for the voluntary dismissal of an 'action' not a 'claim'" and holding that "action" must mean "the entire controversy").  (*See* Dkt. 122 at 3.)  Indeed, other than in *Harvey Aluminum*, the Second Circuit never has held that Rule 41(a) cannot be invoked to dismiss individual claims.  To the contrary, when presented with this exact scenario (a request under Rule 41(a)(2) that the district court dismiss one of multiple claims against a defendant without prejudice) in *Wakefield v. Northern Telecom, Inc.*, the Second Circuit reasoned that the result could be achieved either through Rule 41 or through a Rule 15 amendment to the complaint, and questioned the validity of *Harvey Aluminum*'s pronouncement that Rule 41(a) may be invoked only to dismiss an entire action.  769 F.2d 109, 114 & n.4 (2d Cir. 1985) (concluding that the court "need not resolve that issue" because the same result could be achieved under Rule 15, regardless of the decision in *Harvey Aluminum*).  If it were impossible to dismiss fewer than all claims under Rule 41(a), the *Wakefield* court would have had no reason to question *Harvey Aluminum*.

Alix suggests that the courts in this District allowing Rule 41(a) dismissals of individual claims have done so based purely on criticism of *Harvey Aluminum*, without appreciating the distinction between dismissals of all claims against all defendants or merely some defendants.  Alix is incorrect.  For example, in *Nix v. Office of Commissioner of Baseball*, the court noted that other courts have suggested that "a motion to eliminate only certain claims is more properly

brought as a motion to amend under Rule 15 rather than a motion for voluntary dismissal under Rule 41(a)." No. 17 Civ. 1241, 2017 WL 2889503, at *3 n.2 (S.D.N.Y. July 6, 2017) (internal quotes omitted) (citing *Seidman v. Chobani, LLC*, No. 14 Civ. 4050, 2016 WL 1271066, at *2 (S.D.N.Y. Mar. 29, 2016) (noting similarity between Rules 15 and 41(a) and granting plaintiffs' motion to dismiss certain claims because the voluntary dismissal would not prejudice defendants)). It nevertheless permitted the Rule 41(a) dismissal, relying on *Wakefield* and noting the lack of substantive difference between Rules 15 and 41(a). *See id.* ("Thus, the Court finds that Plaintiffs' invocation of Rule 41(a) to dismiss only their CFAA claim—as opposed to their entire complaint—is permissible."). That determination, like those of other recent cases within this District (and Alix's own view last month), is a well-reasoned application of Second Circuit law that should not be undermined by the fact that other Circuits may disagree.

## II.     The Relief Sought in Alix's Certification Motion Should Be Denied

Alix does not challenge the fact that the Voluntary Dismissal, if effective, was self-executing and cannot simply be withdrawn or amended. And whereas the proper procedure for obtaining relief from the consequences of a Rule 41(a) dismissal is through a motion under Rule 60(b) to vacate the voluntary dismissal, *e.g.*, *Devino v. Duncan*, 215 F. Supp. 2d 414, 417 (S.D.N.Y. 2002), Alix makes no attempt to satisfy Rule 60(b)'s stringent standard, presumably because he recognizes that the rule does not save litigants from their strategic mistakes. *See Nemaizer*, 793 F.2d at 62; *Benton v. Vinson, Elkins, Weems & Searls*, 255 F.2d 299, 300-01 (2d Cir. 1958). Instead, Alix seeks to sidestep the legal consequences of his procedural maneuver with yet more machinations: requests for a Rule 54(b) certification, leave to amend, and an order of preclusion. The Court should deny each of these requests.[2]

---

[2] Indeed, Alix has failed to satisfy his burden of showing that this Court even has authority to grant the relief he seeks. *See, e.g.*, *Ritchie Capital Mgmt., LLC v. Coventry First LLC*, No. 07 Civ. 3494, 2016 WL 6952248, at *16

### A.    The Court Should Deny Alix's Motion for Rule 54(b) Certification

If Alix had a meritorious basis for seeking a Rule 54(b) certification, he would have sought that relief two months ago, when his stated "top priority" was to "pursue an immediate appeal of the Court's dismissal of the RICO claims."   (Dkt. 107.)   Instead, he attempted to circumvent the requirements of Rule 54(b) and the final judgment rule by voluntarily dismissing the State-Law Claims without prejudice, with the intention of "pursuing them separately in state court."   (*Id.*)   The Second Circuit, however, forbids a plaintiff from "effectively … secur[ing] an otherwise unavailable interlocutory appeal" through a voluntary dismissal of remaining claims without prejudice.   *Chappelle*, 84 F.3d at 654.   Belatedly recognizing the consequences of his actions, Alix now asks for a free pass from his own blunders in the form of a Rule 54(b) certification.   But Alix cannot satisfy the requirements of Rule 54(b), and the Court should not grant this extraordinary relief, which is to be "exercised sparingly," *Novick v. AXA Network, LLC*, 642 F.3d 304, 310 (2d Cir. 2011), to facilitate Alix's improper litigation strategy.

Rule 54(b) permits a district court to "direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay."   Fed. R. Civ. P. 54(b).   The Rule represents an exception to the general principle disfavoring piecemeal appeals; therefore, a court should exercise its power to certify a judgment as final "'only if there are interests of sound judicial administration and efficiency to be served[.]"   *Adrian v. Yorktown*, 210 F. App'x 131, 132 (2d Cir. 2006) (quoting *Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627, 629 (2d Cir. 1991)).   Alix's Rule 54(b) motion should be denied here because (1) the RICO and State-Law Claims are closely related and (2) the

---

(S.D.N.Y. Nov. 28, 2016) (concluding that, because there was no basis under Rule 60(b) to vacate plaintiff's Rule 41(a) voluntary dismissal, the court did "not have jurisdiction over the action and therefore cannot grant a Rule 54(b) certification for the previously dismissed non-contract claims")   Alix does not cite any Second Circuit decision squarely addressing a court's authority to provide the relief Alix requests following a voluntary dismissal of every remaining claim.   This provides an additional basis for the Court to deny Alix's requested relief.

equities do not favor granting such extraordinary relief to reward Alix's attempts to evade the final judgment rule.

### 1.    The RICO and State-Law Claims Are Closely Related

The Second Circuit "repeatedly [has] noted that the district court generally should not grant a Rule 54(b) certification 'if the same or closely related issues remain to be litigated'" because "[i]t does not normally advance the interests of sound judicial administration or efficiency to have piecemeal appeals that require two (or more) three-judge panels to familiarize themselves with a given case." *Novick*, 642 F.3d at 311 (quoting *Harriscom*, 947 F.2d at 629, 631); *see also EMI Music Mktg. v. Avatar Records, Inc.*, 317 F. Supp. 2d 412, 424 (S.D.N.Y. 2004) ("Principles of judicial economy strongly discourage piecemeal appeals of litigation, *especially when multiple appeals in the same case may involve the same set of facts*.") (emphasis added); *In re Blech Sec. Litig.*, No. 94 Civ. 7696, 1997 WL 20833, at *2 (S.D.N.Y. Jan. 21, 1997) (certification is inappropriate "where the resolution of the remaining claims could conceivably affect an appellate court's decision of the claims on appeal" (internal quotations omitted)).  Here, the RICO claims and the State-Law Claims are overlapping and intertwined.  Both are predicated on allegations of a purported "scheme" to grow McKinsey's restructuring business by allegedly concealing disqualifying connections in thirteen bankruptcy cases.  (Dkt. 73 at ¶¶ 3-4; 25-6.)   It is difficult to imagine a case less susceptible to an entry of judgment under Rule 54(b) than this one, where some of the causes of action that remain also served as the purported racketeering acts in the dismissed set of RICO claims, and the factual bases for the dismissed claims and the remaining claims are virtually identical.

There is substantial overlap between the RICO claims and Counts V and VI (for breach of contract and promissory estoppel, respectively).  Alix alleges that, as part of Defendants' purported RICO scheme, McKinsey's then-Managing Partner Dominic Barton—when

confronted by Alix about McKinsey's alleged scheme to conceal disqualifying conflicts—
supposedly admitted that McKinsey was engaged in the scheme and entered into a purported oral
agreement with Alix to wind down McKinsey's restructuring business.  (*Id.* at ¶ 26.)  Alix then
alleges that Barton's failure to honor this purported oral promise to shut down McKinsey's
restructuring business both constituted a breach of contract and promissory estoppel (*id*. at
¶¶ 573, 580), and extended the alleged RICO scheme (*e.g.*, *id*. at ¶¶ 320, 330, 554 (alleging,
among other things, that "The Count I Defendants . . . fraudulently perpetuated their scheme
when, confronted by Alix . . . Barton and McKinsey & Co. repeatedly promised to cease their
unlawful activity while secretly intending to continue it" and "Barton actively misled Alix in
order to prevent Alix from acting and to buy McKinsey RTS more time to engage in its unlawful
schemes")).  Indeed, the purportedly breached oral contract becomes the alleged basis for
(a) predicate acts of mail and wire fraud (*e.g.*, *id*. at ¶¶ 326, 419, 483); (b) certain defendants'
involvement as participants in the RICO enterprise (*e.g.*, *id*. at ¶ 299), and conspiracy to violate
RICO (*e.g.*, *id*. at ¶ 554); and (c) allegations of RICO scienter (*e.g.*, *id*. at ¶¶ 374, 376–77, 524–
25).  Moreover, the damages Alix seeks in each of Counts V and VI are the same as those
claimed in his RICO counts—namely, "the loss of fees from bankruptcy engagements unlawfully
secured or maintained by McKinsey RTS subsequent to October 2014."  (*Id.* at ¶¶ 574, 581.)

    To the extent Alix still seeks to assert Count VII (*see* Dkt. 124 at 4, 13 n.5), alleging
tortious interference with business expectancy, the overlap with the RICO claims is just as clear.
Both the RICO claims and Count VII are premised on the contention that McKinsey deprived
AlixPartners of business by concealing disqualifying conflicts of interests.  (Dkt. 73 at ¶¶ 66,
299, 399, 520, 585.)  Alix cites the same litany of purported deficiencies with McKinsey RTS's
Rule 2014 disclosures as the basis for both claims.  (*See id.* at ¶ 586 (citing to Exhibit B and 18

U.S.C. §§ 152(2)-(3) and 1343).)   And he seeks the same damages: "fees from bankruptcy consulting engagements AP would have earned in the absence of the Count 7 Defendants' unlawful conduct."   (*Id.* at ¶ 588.)   In an attempt to downplay the interrelatedness of these claims, Alix contends that Count VII "concerns only two of the thirteen bankruptcy proceedings at issue in this action." (Dkt. 124. at 3–4.)  But Alix's purported RICO scheme is alleged to apply equally across the thirteen bankruptcies, and his attempt to minimize the overlap between the RICO counts and Count VII as "negligible" (*id.* at 3) is therefore not credible.

Identical factual, legal, and evidentiary issues would thus need to be adjudicated to resolve both the RICO and the State-Law Claims if the Second Circuit were to hear an appeal of the RICO dismissal and reverse this Court's decision.   This is precisely the type of duplicative, piecemeal adjudication that precludes Rule 54(b) certification.   *See Novick*, 642 F.3d at 311, 314 (district court's Rule 54(b) certification was "insufficient to confer appellate jurisdiction" because consideration of the appeal from the Rule 54(b) judgment and from any final judgment would require the Court to "consider many of the same issues," including factual issues); *In re Blech*, 1997 WL 20833, at *2 (declining to grant Rule 54(b) certification where dismissed and remaining claims were "sufficiently intertwined" since all "ar[o]se out of allegations of a common fraudulent scheme to inflate the prices of biotechnology securities"); *TADCO Constr. Grp. Corp. v. Dormitory Auth. of N.Y.*, No. 08 Civ. 73, 2012 WL 3011735, at *6 (E.D.N.Y. July 23, 2012) (declining to grant Rule 54(b) application where "the issues that [Plaintiff] would present on an appeal regarding the [dismissed claims] [we]re related to [his] remaining claims, as both sets of claims share[d] nearly identical background facts and involve[d] nearly identical parties").

## 2.      The Equities Do Not Support Alix's Certification Request

Alix's Rule 54(b) request also should be denied because the "policy against piecemeal

appeals and the equities" strongly favors Defendants—not Alix. *Novick*, 642 F.3d at 310. A Rule 54(b) certification "should be used only in the infrequent harsh case, where there exists some danger of hardship or injustice through delay which would be alleviated by immediate appeal." *Citizens Accord, Inc. v. Rochester*, 235 F.3d 126, 129 (2d Cir. 2000) (internal quotation marks and citations omitted). It is "incumbent upon a party seeking immediate relief in the form of a Rule 54(b) judgment to show . . . that the equities favor entry of such a judgment." *Novick*, 642 F.3d at 314. Alix falls well short of meeting this burden.

Alix's express intent in filing his Voluntary Dismissal was to make an end run around the final judgment rule. (*See* Dkt. 107.) This Court should not permit Alix to accomplish that illegitimate goal through the tactical use of a Rule 54(b) certification. Rewarding Alix's procedural gamesmanship would contravene judicial efficiency and fly in the face of this Circuit's rule: "[i]mmediate appeal is available to a party willing to suffer voluntarily the district court's dismissal of the whole action *with prejudice* . . . . By the same token, immediate appeal is unavailable to a plaintiff who seeks review of an adverse decision on some of its claims by voluntarily dismissing the others *without prejudice*." *Rabbi Jacob Joseph Sch. v. Province of Mendoza*, 425 F.3d 207, 210 (2d Cir. 2005); *see also Chappelle*, 84 F.3d at 653–54. In seeking partial final judgment on his RICO claims while refusing to dismiss his State-Law Claims with prejudice, Alix asks this Court to authorize precisely the tactic that the Second Circuit rejected in *Chappelle* and *Rabbi Jacob*. *See Chappelle*, 84 F.3d at 654 ("Because a dismissal without prejudice does not preclude another action on the same claims, a plaintiff who is permitted to appeal following a voluntary dismissal without prejudice will effectively have secured an otherwise unavailable interlocutory appeal."); *Rabbi Jacob*, 425 F.3d at 210 ("Tolerance of that practice would violate the long-recognized federal policy 'against piecemeal appeals'"); *accord*

*Aspen Ford, Inc. v. Ford Motor Co.*, No. 01 Civ. 4677, 2007 WL 2219477, at *2 (E.D.N.Y. July 30, 2007) (denying Rule 54(b) request where there was "nothing preventing the dismissed plaintiffs from renewing their lawsuit" and the motion thus "implicate[d] … concerns about piecemeal appeals"); *Rabbi Jacob Joseph Sch. v. Province of Mendoza*, No. 04 Civ. 9102, 2005 U.S. Dist. LEXIS 13512, at *4–5 (S.D.N.Y. July 7, 2005) (same where requested certification "would provide [p]laintiff with an otherwise unavailable interlocutory appeal").

Alix cannot rely on the loss of his RICO appeal as a basis to obtain through Rule 54(b) exactly the result that *Chappelle* and *Rabbi Jacob* reject. The loss of appellate jurisdiction over an appeal of this Court's RICO decision is neither a hardship nor an injustice. Rather, it is the natural result compelled by Alix's strategic choice and Second Circuit precedent. *See Rabbi Jacob*, 425 F.3d at 210.

The authorities Alix cites do not support his position—in fact, they hold that courts should not countenance "strategic manipulation" by parties seeking to "craft appellate jurisdiction by voluntarily dismissing claims without prejudice." *Black Diamond Sportswear, Inc. v. Black Diamond Equip., Ltd.*, No. 03 Civ. 278, 2006 WL 2585103, at *4 (D. Vt. July 12, 2006) (citing *State Treasurer v. Barry*, 168 F.3d 8, 21 (11th Cir. 1999)). In *Black Diamond*, the court entered a Rule 54(b) certification to protect one party from its adversary's gamesmanship: a plaintiff was granted leave to appeal despite the *defendant's* Rule 41(a)(1)(A)(ii) dismissal of its counterclaim. 2006 WL 2585103, at *4. Similarly, in *Banco Central del Paraguay v. Paraguay Humanitarian Foundation, Inc.*, the plaintiff successfully moved under Rule 41(a)(2) for dismissal of certain of its claims without prejudice, and it was the *defendant* who moved for Rule 54(b) certification when it lost on the remaining claim—a motion the plaintiff did not oppose. No. 01 Civ. 9649, 2008 WL 2951681 at *1 (S.D.N.Y. July 28, 2008). And in *Milberg*,

14

the court noted that the remaining, dismissed claims "presented only a speculative dispute and thus called for an advisory opinion."   2010 WL 1838886, at *4 (noting that dismissed claims "may never" be refiled); *see also Banco Central*, 2008 WL 2951681, at *1 (granting Rule 54(b) certification in part because voluntarily dismissed claims were "essentially dormant").   Here, by contrast, Alix seeks a Rule 54(b) certification to cure his own decision to dismiss his claims, in the service of his overt strategy to manufacture appellate jurisdiction where it should not exist, all against the backdrop of his express intent to "mov[e] forward" on his dismissed State-Law Claims.  (*See* Dkt. 107.)[3]

There is nothing inequitable in a party facing the legal consequences of its own strategic choices, and the equities compel the denial of Alix's certification request.   In sum, this case does not even come close to presenting one of the rare instances warranting entry of judgment under Rule 54(b)—which is likely why Alix did not initially seek such relief and rather engaged in the series of procedural gymnastics intended to circumvent the Second Circuit's rules for orderly appeals.

## B.    Alix's Motion for Leave to Amend Should Be Denied

Alix's request for leave to amend his dismissed RICO claims, in order to replead his voluntarily dismissed State-Law Claims, is an overt attempt to nullify the Voluntary Dismissal without attempting to satisfy the requirements of Rule 60(b).

Even if Alix had a valid basis for leave to amend, he cannot do so to reinstate the State-Law Claims.  Numerous courts have held that claims that have been voluntarily dismissed cannot

---

[3] Indeed, even assuming the Court held that Alix's Voluntary Dismissal was ineffective, all the reasons why the RICO and State-Law Claims are intertwined would apply, and Alix would suffer no prejudice by waiting to appeal until the State-Law Claims are resolved by this Court.  *See Harriscom*, 947 F.2d at 630 (finding no indication that "adherence to the normal timetable for appellate review of the dismissal of the four contract claims would cause Harriscom any hardship or injustice"); *In re Vivendi Universal, S.A., Secs. Litig.*, No. 02 Civ. 5571, 2012 WL 362028, at *4 (S.D.N.Y. Feb. 6, 2012) ("[A]waiting final judgment before seeking appellate review is a far cry from a hostage situation.").

be reinstituted in the original action but instead, if they are to be repleaded, must be filed in a new action.  *See, e.g.*, *Baxter v. Atl. Care Main Pomona Hosp.*, No. 13 Civ. 7876, 2015 WL 715012, at *1 (D.N.J. Feb. 19, 2015) ("As this case was deemed voluntarily dismissed [under] Rule 41(a), the proper procedure is to require [plaintiff] to file a new civil action rather than reopen an action that was deemed voluntarily dismissed."); *Great Am. Ins. Co. of N.Y. v. Day*, No. 12 Civ. 2295, 2013 WL 254563, at *1 (D. Md. Jan. 22, 2013) (finding where plaintiff voluntarily dismissed under Rule 41(a)(1)(A)(i), "[p]laintiff may not reopen the instant case, but must instead commence a new action"); *Thomas v. Ramapo Coll. of N.J.*, No. 10 Civ. 3898, 2011 WL 3206448, at *3 (D.N.J. July 27, 2011) (denying plaintiff's motion to reopen and determining that plaintiff must instead "refil[e] his complaint as a new case if he so chooses"); *Rest. Teams Int'l, Inc. v. Dominion Capital Fund Ltd.*, No. 99 Civ. 4138, 2002 WL 1603150, at *1 (S.D.N.Y. July 18, 2002) ("[W]here a claim has been dismissed without prejudice, the plaintiff is entitled to commence a new action.").   Requiring voluntarily dismissed claims to be asserted in a new action is consistent with "[the] hornbook law that a voluntary dismissal without prejudice under Rule 41(a) *leaves the situation as if the action never had been filed*."   *United States v. L-3 Commc'ns EOTech, Inc*., 921 F.3d 11, 19 (2d Cir. 2019) (internal citation and quotation marks omitted).   Alix does not cite a single case permitting a plaintiff to reinstate claims that were previously voluntarily dismissed in the original action.   The only case he cites in response is *Da Hing, 68 Inc. v. Golden Wok Ohio, LLC*, No. 07 Civ. 318, 2008 WL 11417189 (D.N.M. Feb. 20, 2008), which had nothing to do with Rule 41(a) dismissals and instead addressed the court's reinstatement of claims that were dismissed without prejudice by the court due to the plaintiff's failure to obtain counsel.  *See id.* at *1-2.

Amending a complaint in the original action to reinstate voluntarily dismissed claims, as

Alix requests, would obviate the protections that defendants are accorded under Rule 41.  As the *Restaurant Teams* decision explained, requiring the refiling of previously dismissed claims in a new action avoids "ambiguity with respect to [the re-filed claims'] timeliness" and "allows the court to effectuate the provisions of Rule 41(d)," *see* 2002 WL 1603150, at *1, which permits an award of costs when a plaintiff "commences an action based upon or including the same claim against the same defendant" that was previously voluntarily dismissed.  S*ee* Fed. R. Civ. P. 41(d); *see also Thomas*, 2011 WL 3206448, at *2 (describing the specific set of procedures to be followed under Rule 41 voluntary dismissal and discouraging use of other Rules to "circumvent procedures already set in place by the Federal Rules").  Hence, Alix's contention that "[n]othing in Rule 15 prevents a district court from permitting an amendment to reassert previously dismissed claims" (Dkt. 124 at 12), misses the point.  This is not a question of semantics; real consequences flow from Alix's machinations (*see* Dkt. 119 at 7), and Alix himself provides an example by admitting that at least one of his State-Law Claims would be time-barred if filed today (*see* Dkt. 124 at 13, n.5).

Moreover, although a court may grant a plaintiff leave to amend a complaint under Rule 15 at "various stages of the litigation" (Dkt. 124 at 10), Alix disregards the fact that he has no live complaint to amend.  *See Hatch v. District of Columbia*, 111 F.3d 962 (D.C. Cir. 1997) ("The district court did not abuse its discretion in also denying appellant's motion to amend because setting aside the original dismissal with prejudice was a necessary first step before the court could grant leave to file an amended complaint."); *Mitsubishi Aircraft Int'l, Inc. v. Brady*, 780 F.2d 1199, 1203 (5th Cir. 1986) ("[B]y the time the motion to amend was filed, there was no longer existent a claim to be amended, since summary judgment was already granted."); *Rest. Teams Int'l, Inc.*, 2002 WL 1603150, at *2 (noting that plaintiff "has no pleading to which to add

its proposed amended claims").  The normal course for filing an amended complaint after a dismissal with prejudice is a motion under Rule 59(e) or 60(b).  *See, e.g.*, *Rothstein v. UBS AG*, 772 F. Supp. 2d 511, 518 (S.D.N.Y. 2011); *cf., e.g.*, *Freeman v. Rice*, 399 F. App'x 540, 543-44 (11th Cir. 2010) (affirming treatment of motion to amend complaint following dismissal with prejudice as a motion under Rule 60(b), even though final judgment had not yet been entered in a separate document under Rule 58).  In the only case Alix cites as a purported example of a court granting leave to amend following dismissal of all remaining claims—*S.E.C. v. Gonzalez de Castilla*, 184 F. Supp. 2d 365 (S.D.N.Y. 2002)—the request to amend was made *before* the court dismissed the plaintiff's then-pending claims.  *See id.* at 367.

Even if it were procedurally permissible to grant Alix leave to amend to reinstate the State-Law Claims, it would be inappropriate to do so.  "[A] finding that a party is seeking leave to amend solely to gain a tactical advantage, . . . supports a finding that such an amendment is made in bad faith."  *Youngbloods v. BMG Music*, No. 07 Civ. 2394, 2011 WL 43510, at *9 (S.D.N.Y. Jan. 6, 2011) (internal citation omitted).  As discussed above, Alix cannot meet the standard under Rule 60(b) to directly undo the Voluntary Dismissal.  His request for leave to replead is nothing more than an ill-fated attempt to accomplish that result indirectly, and to sidestep the Second Circuit's enforcement of the final judgment rule.  That is not a proper invocation of Rule 15.

### C. Alix's Request for an Order of Preclusion Should Be Denied

Finally, if the Voluntary Dismissal is deemed effective and leave to replead the State-Law Claims is denied, Alix asks the Court to "enter an order on Plaintiff's consent prohibiting the re-filing of the State Law Claims in federal court."  (Dkt. 124 at 18.)  Alix fails to cite a single authority in support of this unusual request—likely because it is procedurally improper.  Because the Voluntary Dismissal was immediately effective, the State-Law Claims are no longer

before this Court, and Alix cannot purport to invoke the Court's authority to issue an order adjudicating where those claims can or cannot be filed.  To find otherwise would violate the basic tenet that a court cannot enter a judgment that goes beyond the claims asserted in the pleadings.  *See Sylvan Beach v. Koch*, 140 F.2d 852, 861–62 (8th Cir. 1944) ("A party is no more entitled to recover upon a claim not pleaded than he is to recover upon a claim pleaded but not proved.").  This is no less true with respect to claims that were voluntarily dismissed by notice.  The notice alone removes the court's jurisdiction over the dismissed claims, *see U.S. D.I.D. Corp. v. Windstream Commc'ns, Inc.*, 775 F.3d 128, 134 (2d Cir. 2014), and a court cannot impose conditions on claims that are voluntarily dismissed by notice under Rule 41(a)(1)(A)(i), *see, e.g.*, *Youssef v. Tishman*, 744 F.3d 821, 823–25 (2d Cir. 2014) (explaining that a court cannot enter a dismissal with prejudice after a plaintiff has filed a Rule 41(a)(1)(A)(i) notice of voluntary dismissal without prejudice).

Even if Alix could invoke this Court's authority to enter the requested consent order, the request should be denied in the Court's discretion.  It is apparent that Alix seeks the order to evade the consequences of his Voluntary Dismissal; presumably, Alix believes that an order precluding him from refiling his State-Law Claims in federal court—but not state court—will restore his ability to appeal the dismissal of the RICO claims.[4]  Alix seeks, essentially, to obtain the exact relief he initially sought and that Second Circuit case law makes abundantly clear he cannot have.  The request should be denied.

## CONCLUSION

For the foregoing reasons, the Voluntary Dismissal was immediately effective when filed and the Court should deny Alix's requests for entry of judgment pursuant to Rule 54(b), leave to

---

[4] Defendants do not share that view.  The judicial policy against claim-splitting applies equally when a plaintiff splits claims between two federal courts as when a plaintiff splits claims between federal and state courts.

amend to reinstate his State-Law Claims, and entry of an order of preclusion.

Dated:          October 17, 2019
                New York, New York


SELENDY & GAY PLLC

By: /s/ Faith E. Gay
        Faith E. Gay
        Jennifer M. Selendy
        David S. Flugman
        1290 Avenue of the Americas
        New York, New York 10104
        Telephone: (212) 390-9000
        E-mail: fgay@selendygay.com
        *Attorneys for The McKinsey Defendants*


DRISCOLL & REDLICH

By: /s/ Catherine L. Redlich
        Catherine L. Redlich
        110 West 40th Street, Suite 1900
        New York, New York 10018
        Telephone: (212) 986-4030
        *Attorney for Defendant Dominic Barton*


KELLOGG, HANSEN, TODD, FIGEL &
FREDERICK P.L.L.C.

By: /s/ Reid M. Figel
        Reid M. Figel
        Bradley E. Oppenheimer
        Robert C. Klipper
        1615 M Street, NW, Suite 400
        Washington, D.C. 20036
        Telephone: (202) 326-7968
        *Attorneys for Defendant Seth Goldstrom*


DEBEVOISE & PLIMPTON LLP

By: /s/ John Gleeson
        John Gleeson
        Andrew J. Ceresney
        Erica S. Weisgerber
        Nathan S. Richards
        919 Third Avenue
        New York, New York 10022
        Telephone: (212) 909-6000
        E-mail: jgleeson@debevoise.com
        *Attorneys for The McKinsey Defendants*


ROBBINS, RUSSELL, ENGLERT, ORSECK,
UNTEREINER & SAUBER LLP

By: /s/ Richard A. Sauber
        Richard A. Sauber
        Ariel N. Lavinbuk
        2000 K Street, NW, 4th Floor
        Washington, D.C. 20006
        Telephone: (202) 775-4500
        *Attorneys for Defendants Kevin Carmody, Jon
        Garcia, Alison Proshan, and Robert Sternfels*


MCDONALD HOPKINS LLP

By: /s/ Micah Marcus
        Micah Marcus
        Christopher Dean
        300 North LaSalle Street, Suite 1400
        Chicago, Illinois 60654
        Telephone: (312) 280-0111
        *Attorneys for Defendant Jared Yerian*