UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                          :
JAY ALIX,                                                 :
                                                          :
                              Plaintiff,                  :
                                                          :                    18-CV-4141 (JMF)
                 -v-                                      :
                                                          :                    OPINION AND ORDER
MCKINSEY & CO., INC., et al.,                             :
                                                          :
                              Defendants.                 :
                                                          :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

        Plaintiff Jay Alix, the founder, thirty-five-percent owner, and director of a company now

known as AlixPartners LLP ("AlixPartners"), alleges that McKinsey & Co., Inc. ("McKinsey")

and related Defendants obtained bankruptcy-consulting business at the expense of AlixPartners

through fraud.  In 2019, the Court dismissed Alix's sole federal claims, brought under the

Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), for failure

to state a claim.  *See Alix v. McKinsey & Co., Inc.*, 404 F. Supp. 3d 827 (S.D.N.Y. 2019).  The

Court reserved judgment on Alix's pendent state-law claims pending supplemental briefing on

whether there was complete diversity between the parties.  *See id.* at 842.  Before that briefing

was complete, however, the case took a few unexpected turns.  First, Alix filed a notice stating

that he was voluntarily dismissing his state-law claims under Rule 41(a)(1)(A)(i) of the Federal

Rules of Civil Procedure so that he could immediately appeal the Court's dismissal of his RICO

claims.  Two days later, though, Alix purported to retract his notice of dismissal, and he has

since argued that the notice was ineffective in the first instance because it did not dismiss the

entire action.  The net effect of these maneuvers are complex disputes between the parties about

whether and to what extent Alix's claims remain pending and when he can appeal the Court's
dismissal of the federal claims, if he can appeal at all.

Alix now moves for three alternative forms of relief: first, entry of a final judgment as to
the RICO claims under Rule 54(b); second, leave to amend to reassert the state-law claims; and
third, an order precluding him from refiling the state-law claims in federal court. By Alix's own
admission, these requests are designed to preserve, or perhaps revive, his ability to appeal the
dismissal of the RICO claims. For the reasons discussed below, Alix's motions are DENIED.

## BACKGROUND

The Court assumes general familiarity with the background of this litigation, which is
described at length in the its prior opinion. *See Alix*, 404 F. Supp. 3d at 830-32. Briefly stated,
on May 9, 2018, Alix filed suit against McKinsey and a range of related corporate Defendants
(together with McKinsey, the "McKinsey Defendants") and individual Defendants. ECF No. 1.
Alix's operative complaint (the "Complaint"), ECF No. 73 ("Compl."), alleges two sets of
claims: First, he brings substantive RICO claims and RICO conspiracy claims against all
Defendants; and second, he brings state-law claims for breach of contract, promissory estoppel,
and tortious interference with business expectancy (collectively, the "State Law Claims") against
only the McKinsey Defendants. The Complaint identifies AlixPartners as the "direct victim and
target" of these alleged violations but alleges that AlixPartners "fully and lawfully assigned" its
claims to Alix. Compl. at 1; *id.* ¶¶ 5, 7, 29; *see* ECF No. 106 ("Alix Decl."), ¶ 23 (asserting that
the assignment occurred on August 31, 2017). The Complaint invokes two bases for jurisdiction:

federal-question jurisdiction in light of the RICO Claims and diversity of the citizenship between Alix and Defendants.  *See* Compl. ¶¶ 41-42.

On August 19, 2019, the Court dismissed the RICO Claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, holding that the Complaint failed to plausibly allege proximate causation.  *See Alix*, 404 F. Supp. 3d at 834-40.  The Court then turned to the State Law Claims.  The Court noted that, "[a]bsent an independent basis for federal jurisdiction," it "would ordinarily decline to exercise supplemental jurisdiction over state-law claims" where it had "dismissed all federal claims."  *Id.* at 840.  The Court acknowledged Alix's invocation of diversity jurisdiction but noted that he had failed to properly allege his own citizenship and, more importantly, had failed to address whether diversity jurisdiction existed in light of the assignment from AlixPartners.  *Id.* at 841.  Accordingly, the Court reserved judgment on the State Law Claims and ordered supplemental briefing on jurisdiction.  *Id.*

On September 3, 2019, Alix submitted his supplemental briefing, as well as a declaration discussing the assignment.  *See* ECF Nos. 105-06.  But the same day, Alix also filed a letter stating that his "top priority is to pursue an immediate appeal of the Court's dismissal of the RICO claims, while simultaneously moving forward on [his] state law claims."  ECF No. 107, at 1.  Accordingly, Alix "opted to voluntarily withdraw his state law claims ***only*** pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure without prejudice to refiling those claims and pursuing them separately in state court."  *Id.*  Alix noted in his letter that there was "a split of authority in this Circuit concerning whether Rule 41(a)(1)(A)(i) can be used to withdraw individual claims, as opposed to an entire action," but argued that a partial withdrawal of

individual claims was permissible.  *Id.*  Along with the letter, Alix filed a formal notice of

voluntary dismissal of the State Law Claims.  *See* ECF No. 108.

On September 4, 2019, the Court called for a response from Defendants.  *See* ECF No.

109.  The Court noted that Defendants should address whether, if dismissal of individual claims

was inappropriate under Rule 41(a)(1)(A)(i), the Court should treat the notice of voluntary

dismissal as being made under Rule 41(a)(2) instead.  *Id.*  But the very next day, before

Defendants even responded, Alix filed another letter, stating that he was "concerned" about the

possibility that the Court would treat his notice of voluntary dismissal as being made under Rule

41(a)(2).  ECF No. 111.  He further noted that, after conducting additional research, he had come

to the conclusion that his previously filed "notice of partial voluntary dismissal" was

"ineffective."  *Id.*  Accordingly, Alix sought to withdraw the notice and requested "that the Court

proceed with briefing on the issue of diversity jurisdiction as contemplated by its August 19

Order."  *Id.*  To that end, and pursuant to the Court's prior instruction that he submit

supplemental allegations "[t]o the extent . . . necessary to establish . . . jurisdiction," Alix also

filed a proposed second amended complaint.  *Alix*, 404 F. Supp. 3d at 841; *see* ECF No. 112.

In response, the Court ordered that "the notice of voluntary dismissal at ECF No. 108"

was "deemed withdrawn" and "VACATED."  ECF No. 113.  But on September 6, 2019, the

McKinsey Defendants filed a letter stating that they were "examining the consequences, under

Second Circuit law, of the Plaintiff's notice of voluntary dismissal of claims in this case, and

whether those consequences survive an attempt to withdraw the notice."  ECF No. 114.  Then, on

September 19, 2019, the McKinsey Defendants filed a supplemental brief arguing that Alix's

notice of voluntary dismissal "immediately removed the claims from the Court's jurisdiction,"

and thus could not "be withdrawn or amended."  ECF No. 119 ("Defs.' Dismissal Mem."), at 1.

Accordingly, the McKinsey Defendants argued that Alix would have to refile the State Law

Claims, either in state court or in federal court under a new case number.  *Id.* at 6.  The

McKinsey Defendants further argued that Alix had forfeited his right to appeal the Court's

dismissal of the RICO claims because "Second Circuit precedent holds that a voluntary without-

prejudice withdrawal of some claims for the purpose of accelerating an appeal of other, already-

dismissed claims deprives the appellate court of jurisdiction."  *Id.* at 1.

On October 3, 2019, Alix filed another brief, arguing that his notice of voluntary

dismissal had been ineffective because "[t]he vast weight of authority . . . holds that a notice

pursuant to *Fed. R. Civ. P.* 41(a)(1)(A)(i) cannot dismiss fewer than all claims against any

defendant because the Rule only authorizes dismissal of 'actions,' not 'claims.'"  ECF No. 122

("Alix Dismissal Mem."), at 2.  Alix argued, therefore, that "the State Law Claims remain in this

action."  *Id.* at 10.  The same day, Alix also filed a motion for an order pursuant to Rule 54(b)

"certifying as final the dismissal of [the RICO Claims]."  ECF No. 123 ("Alix Rule 54(b) Mot."),

at 1.  Alix sought this relief "[i]rrespective of whether the Court finds the Notice [of voluntary

dismissal] effective."  ECF No. 124 ("Alix Rule 54(b) Mem."), at 3.  In the alternative, Alix

sought leave to amend the Complaint to "reinstate" the State Law Claims or an order precluding

him from re-filing the State Law Claims in any federal court so that he could take an appeal of

the Court's dismissal of the RICO Claims.  Alix Rule 54(b) Mot. 1-2.  Alix acknowledged that

all of these requests were designed to "create or preserve appellate jurisdiction" over the Court's

decision dismissing the RICO Claims.  Alix Rule 54(b) Mem. 14.

## DISCUSSION

As noted, Alix now moves for three forms of relief: first, entry of a final judgment as to

the RICO Claims under Rule 54(b); second, leave to amend to reassert the State Law Claims;

and third, an order precluding him from refiling the State Law Claims in federal court.  The
Court will address each of these requests in turn, but before doing so pauses to address a
threshold question: whether Alix's notice of voluntary dismissal of the State Law Claims
pursuant to Rule 41(a)(1) was effective and, if so, whether it was later withdrawn.

## A.  Alix's Voluntary Dismissal of the State Law Claims Was Valid and Effective

Rule 41(a), in relevant part, authorizes a plaintiff to "dismiss an action without a court
order by filing . . . a notice of dismissal before the opposing party serves either an answer or a
motion for summary judgment."  Fed. R. Civ. P. 41(a)(1)(A)(i).  Alix filed a notice pursuant to
that Rule purporting to dismiss the State Law Claims alone.  *See* ECF No. 108.  But Alix now
argues that his notice was ineffective because Rule 41(a) allows for dismissal only of an "action"
and the notice "purported to dismiss fewer than all claims against McKinsey."  Alix Dismissal
Mem. 2.  By contrast, Defendants argue that the notice was effective for either of two reasons:
first, because dismissal of all claims remaining after a court has already dismissed some claims
constitutes dismissal of an "action" within the meaning of Rule 41(a)(1); and second, because
Rule 41(a)(1) allows for dismissal of individual claims.  *See* ECF No. 129 ("Opp'n"), at 3, 6.

The Court need not and does not resolve whether Rule 41(a) allows for dismissal of
individual claims — a question upon which courts are divided.  *Compare, e.g.*, *CBX Res., L.L.C.
v. ACE Am. Ins. Co.*, 959 F.3d 175, 177 (5th Cir. 2020) ("Rule 41(a) should not be available to
dismiss only some claims a plaintiff has against a defendant."), *and Taylor v. Brown*, 787 F.3d
851, 857 (7th Cir. 2015) ("Since we give the Federal Rules of Civil Procedure their plain
meaning, Rule 41(a) should be limited to dismissal of an entire action." (internal quotation
marks, citation, and alterations omitted)), *with Azkour v. Haouzi*, No. 11-CV-5780 (RJS) (KNF),
2013 WL 3972462, at *3 (S.D.N.Y. Aug. 1, 2013) (Sullivan, J.) (joining "other courts in this

Circuit in interpreting Rule 41(a)(1)(A) as permitting the withdrawal of individual claims"

(citing cases)).  That is because it agrees with Defendants' alternative argument: that Alix's

notice dismissed the "action" in its entirety insofar as it dismissed all claims that remained after

the Court's dismissal of the RICO Claims.  As one leading commentator on civil procedure,

*Moore's Federal Practice*, observes: "When some of the claims against a defendant have

previously been dismissed by court order, the plaintiff may voluntarily dismiss the remaining

ones because the claims remaining after a partial dismissal are deemed to comprise the entire

action as against that defendant for Rule 41(a)(1)(A)(i) purposes."  8 James W. Moore et al.,

*Moore's Federal Practice – Civil* § 41.21[1] (2020) (citing *Wilson-Cook Med., Inc. v. Wilson*,

942 F.2d 247, 251 (4th Cir. 1991); *H.M. Financiere & Holding, S.A. v. Kastory*, No. 89 C 2685,

1989 U.S. Dist. LEXIS 14033, at *2-3 (N.D. Ill. Nov. 16, 1989)).  In such circumstances,

"dismissing the remaining claims is synonymous with dismissal of the action, as (to state the

obvious) dismissal of all the remaining claims will terminate [the] action."  *Chavez v. Ill. State*

*Police*, No. 94 C 5307, 1999 WL 754681, at *2 (N.D. Ill. Sept. 9, 1999).[1]

That conclusion may not be compelled by, but is consistent with, Second Circuit

precedent.  In *Chappelle v. Beacon Communications Corp.*, 84 F.3d 652, 653 (2d Cir. 1996), for

---

[1]    *See also, e.g.*, *Metro. Fed. Bank of Iowa, F.S.B. v. W.R. Grace & Co.*, 999 F.2d 1257,
1262 (8th Cir. 1993) (holding that the district court did not abuse its discretion in granting
voluntary dismissal of claims that were not resolved by an earlier summary judgment decision);
*QFA Royalties, LLC v. ZT Invs., LLC*, No. 17-CV-0507-WJM-NRN, 2018 WL 4095114, at *3
(D. Colo. Aug. 28, 2018) (observing that the "Tenth Circuit takes a strict view of the words 'an
action' and holds that Rule 41 cannot apply to 'less than all claims in an action,'" but holding
that the plaintiff was entitled to dismiss "all outstanding claims" pursuant to Rule 41(a) after the
Court's summary judgment ruling); *Pharm. Care Mgmt. Ass'n v. District of Columbia*, 796 F.
Supp. 2d 93, 95 n.2 (D.D.C. 2011) (noting that the plaintiff could "voluntarily dismiss all that
meaningfully remains of its action . . . under Rule 41(a)"); *Certain Underwriters at Lloyd's v.*
*Milberg LLP*, No. 08-CV-7522 (LAP), 2010 WL 1838886, at *1 (S.D.N.Y. May 4, 2010) (noting
that, after the court had dismissed "most" of the plaintiff's claims, the plaintiff had voluntarily
dismissed "its remaining claims" pursuant to Rule 41(a)).

example, the Court addressed a similar situation in which the district court had dismissed some, but not all, of the plaintiff's claims on the merits and on jurisdictional grounds.  "Wishing to pursue a unified action against all of the initial defendants in state court," the plaintiff then "requested a voluntary dismissal of her action without prejudice pursuant to Rule 41(a)(2)," which the district court granted.  *Id.*  The Second Circuit concluded that it lacked jurisdiction to hear an appeal from the district court's initial decision, reasoning that "because a dismissal without prejudice does not preclude another action on the same claims, a plaintiff who is permitted to appeal following a voluntary dismissal without prejudice will effectively have secured an otherwise unavailable interlocutory appeal."  *Id.* at 654.  Implicit in that conclusion, however, was the view that the plaintiff's voluntary dismissal was valid as to the remaining claims.  *See also Symbol Techs., Inc. v. Metrologic Instruments, Inc.*, 84 F. App'x 112, 113-14 (2d Cir. 2003) (summary order) (applying *Chappelle* to a dismissal under Rule 41(a)(1)); *cf. Ali v. Fed. Ins. Co.*, 719 F.3d 83, 89 (2d Cir. 2013) ("If claims unaffected by the adverse ruling are also pending, a party who loses on a dispositive issue that affects only a portion of his claims may elect to abandon the unaffected claims [under Rule 41(a), with prejudice], invite a final judgment, and thereby secure review of the adverse ruling."  (internal quotation marks and alterations omitted)).

Conspicuously, Alix does not cite any authority for the proposition that, where a court has dismissed some claims, Rule 41(a) cannot be used to dismiss all remaining claims.  Instead, his sole argument is that the Court retains jurisdiction until it renders a final judgment, which it has not yet done with respect to the RICO Claims.  *See* Alix Dismissal Mem. 6.  But that is a non sequitur.  Courts routinely "retain" jurisdiction even where an "action" has indisputably concluded (in some case, even *after* entry of final judgment) — to impose sanctions, to award

attorney's fees, to enforce settlement agreements, and so on.  *See, e.g.*, *Covanta Onondaga Ltd. P'ship v. Onondaga Cty. Res. Recovery Agency*, 318 F.3d 392, 396 (2d Cir. 2003) ("[A] court that has concluded its adjudication of the merits of a case within its jurisdiction by entering a final judgment retains authority to take action with respect to some collateral matters related to the case, such as attorney's fees and costs, and sanctions.  In addition, a court that enters a judgment with continuing effect retains some authority to enforce its judgment."  (citations omitted)).  In fact, elsewhere, Alix himself explicitly argues that a court retains jurisdiction (to grant leave to amend) even after "the entire action" has been dismissed.  ECF No. 136, at 7.  And in the very case that Alix cites for the proposition that the Court retains jurisdiction until entry of a final judgment, *Certain Underwriters at Lloyd's v. Milberg LLP*, the plaintiff voluntarily dismissed its remaining claims after the court had dismissed some claims — precisely the situation here.  *See* 2010 WL 1838886, at *1; *see* Alix Dismissal Mem. 6.  Finally, as Alix himself concedes, courts have held that Rule 41(a) permits dismissal of all claims against a particular defendant "even if other claims remain against other defendants."  Alix Dismissal Mem. 3; *see also* 8 *Moore's Federal Practice – Civil* § 41.21[1].  Yet in those situations, a court plainly retains jurisdiction over the original "action" as a whole.  Thus, the fact that the Court may retain jurisdiction over the RICO Claims is irrelevant to the question at hand.

In short, Alix's notice of voluntary dismissal of the State Law Claims was valid and effective because "the counts remaining after the partial dismissal then comprised the entire action."  *Wilson-Cook Med.*, 942 F.2d at 251.  That does not end the matter, however, because Alix filed a letter the day after filing the notice purporting to "withdraw[]" it and the Court entered an order granting that request.  *See* ECF Nos. 111, 113.  Upon reflection, however, those actions had no legal effect.  Because Alix's notice of voluntary dismissal was filed "before the

opposing party serve[d] either an answer or a motion for summary judgment," Fed. R. Civ. P.

41(a)(1)(A)(i), the dismissal was self-executing and effective immediately, *see De Leon v.*

*Marcos*, 659 F.3d 1276, 1283 (10th Cir. 2011) ("A stipulation of dismissal filed under Rule

41(a)(1)(A)(i) or (ii) is self-executing and immediately strips the district court of jurisdiction

over the merits.").  In addition, "notices of dismissal filed in conformance with the explicit

requirements of Rule 41(a)(1)(A)(i) are not subject to vacatur," *Thorp v. Scarne*, 599 F.2d 1169,

1176 (2d Cir. 1979), except in certain rare circumstances — not present here — "where the

merits have been brought before the court before the filing of either the answer or a motion for

summary judgment," *Champions League, Inc. v. Big3 Basketball, LLC*, No. 17-CV-7389 (LTS)

(KHP), 2018 WL 5619973, at *4 (S.D.N.Y. Sept. 17, 2018).  Accordingly, the Court's Order

vacating the voluntary dismissal was void *ab initio*, and the State Law Claims were dismissed

without prejudice as of September 3, 2019, the date of Alix's notice.

## B.  Alix Is Not Entitled to Entry of Judgment Pursuant to Rule 54(b)

With that, the Court turns to Alix's next request: entry of final judgment as to the RICO

Claims pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.  That Rule provides, in

relevant part, that "[w]hen an action presents more than one claim for relief . . . the court may

direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the

court expressly determines that there is no just reason for delay."  Fed. R. Civ. P. 54(b).  In

addressing a Rule 54(b) motion, the Court must first determine "whether [R]ule 54(b) applies at

all to the circumstances of the case," and if so, whether certification is "in the interest of sound

judicial administration."  *Ginett v. Comput. Task Grp., Inc.*, 962 F.2d 1085, 1091-92 (2d Cir.

1992) (internal quotation marks omitted); *see Harriscom Svenska AB v. Harris Corp.*, 947 F.2d

627, 629 (2d Cir. 1991) (stating that certification is warranted "only if there are interests of

sound judicial administration and efficiency to be served, or, in the infrequent harsh case, where there exists some danger of hardship or injustice through delay which would be alleviated by immediate appeal" (internal quotation marks, citations, and alterations omitted)).  Certification under Rule 54(b) must be granted "sparingly" in light of the "policy against piecemeal appeals." *Novick v. AXA Network, LLC*, 642 F.3d 304, 310 (2d Cir. 2011) (internal quotation marks omitted).

In light of these standards, the Court concludes that certification is inappropriate.  For one thing, as the Rule's text makes plain, Rule 54(b) applies only if a court is asked to enter final judgment as to "one or more, *but fewer than all*, claims."  Fed. R. Civ. P. 54(b) (emphasis added); *see Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 743 (1976) ("[The Rule] is limited expressly to multiple claims actions in which one or more but less than all of the multiple claims have been finally decided and are found otherwise to be ready for appeal."  (internal quotation marks omitted)).  Here, however, when Alix filed his Rule 54(b) motion, he had already filed his notice of voluntary dismissal; at that time, therefore, there were no claims remaining in the case other than the RICO Claims.  Alix is correct in noting that, when presented with similar circumstances, the court in *Milberg*, granted a motion to enter partial judgment under Rule 54(b), reasoning (in connection with its analysis of whether it had already entered final judgment) that it had "not finally resolved all of the issues in [the] case because [the plaintiff] remain[ed] free to reinstate" the claims that it had dismissed without prejudice under Rule 41(a).  2010 WL 1838886 at *3; *see* Alix Rule 54(b) Mem. 5-6.  But that decision is no aid to Alix because, as discussed below, he cannot reinstate the State Law Claims because the Court lacks subject-

matter jurisdiction over them.[2]  Thus, by its terms, Rule 54(b) does not "appl[y] at all to the

circumstances of the case."  *Ginett*, 962 F.2d at 1091.

In any event, even if Rule 54(b) were applicable, the Court would not exercise its

discretion to enter partial judgment pursuant to the Rule.  The explicit motivation behind Alix's

Rule 54(b) motion is a concern that, by voluntarily dismissing his State Law Claims without

prejudice, he has fallen into the so-called "finality trap."  *Perry v. Schumacher Grp. of La.*, 891

F.3d 954, 959 n.3 (11th Cir. 2018) ("The finality trap happens when a district court disposes of

some, but not all, claims on the merits, and the plaintiff then voluntarily dismisses the action

without prejudice," in which case appellate review may be "foreclosed because the dismissal of

the action without prejudice is not a 'final decision[.]'"); *see, e.g.*, *Milberg*, 2010 WL 1838886,

at *4 ("Were the Court not to grant Plaintiffs' motion, Plaintiffs may be permanently denied an

appeal . . . .").  As noted, under *Chappelle*, the Second Circuit lacks jurisdiction to hear an appeal

based on a "final judgment" that was deliberately manufactured through a voluntary dismissal

without prejudice.  *See Rabbi Jacob Joseph Sch. v. Province of Mendoza*, 425 F.3d 207, 210 (2d

Cir. 2005).  To grant Rule 54(b) certification for the express purpose of creating appellate

jurisdiction over the RICO Claims' dismissal, therefore, would directly undermine *Chappelle* —

a result that is not "in the interest of sound judicial administration."  *Ginett*, 962 F.2d at 1092

(internal quotation marks omitted).  Nor is this a case in which certification is necessary to avoid

---

[2]      The other cases cited by Alix in which a district court entered partial judgment following
a partial voluntary dismissal are distinguishable.  *See Banco Central del Para. v. Para.
Humanitarian Found., Inc.*, No. 01-CV-9649 (JFK), 2008 WL 2951681, at *1 (S.D.N.Y. July 28,
2008) (entering partial judgment under Rule 54(b) in part because the defendant did not oppose
the request); *Black Diamond Sportswear, Inc. v. Black Diamond Equip., Ltd.*, No. 03-CV-278
(JGM), 2006 WL 2585103, at *4 (D. Vt. July 12, 2006) (entering partial judgment where the
court had ruled on the merits of the plaintiff's claims, and allowed the defendant to voluntarily
dismiss its counterclaim, because doing otherwise would leave the plaintiff's right to appeal at
the mercy of the defendant's prosecution of its counterclaim);.

a "harsh" or unjust result, *see Adrian v. Town of Yorktown*, 210 F. App'x 131, 132-33 (2d Cir. 2006) (summary order) (quoting *Harriscom*, 947 F.2d at 629), as Alix has options that would enable him to appeal the Court's dismissal of the RICO Claims.  For instance, he can secure a final resolution of the State Law Claims by voluntarily abandoning them with prejudice, *see Caspary v. La. Land & Expl. Co.*, 725 F.2d 189, 191 (2d Cir. 1984) (per curiam); through litigation; or even by operation of law, *see Chappelle*, 84 F.3d at 654 n.3 (noting a case in which finality was achieved upon the expiration of the statute of limitations).  Accordingly, Alix's motion under Rule 54(b) must be and is denied.

## C.  The Court Lacks Subject-Matter Jurisdiction Over the State Law Claims

Alix's next pitch to escape the bind he has created for himself is to seek leave to amend the Complaint to reassert the State Law Claims that he voluntarily dismissed.  Alix Rule 54(b) Mem. 9.  Under Rule 15, leave to amend should be "freely" given "when justice so requires." Fed. R. Civ. P. 15(a).  Nevertheless, Defendants argue that leave to amend may not be granted when, as here, a plaintiff seeks to reinstate voluntarily dismissed claims and that Alix is therefore required to file a new action.  Opp'n 15-17 (citing *Rest Teams Int'l, Inc. v. Dominion Capital Fund Ltd.*, No. 99-CV-4138 (RJW) (JCF), 2002 WL 1603150 (S.D.N.Y. July 18, 2002)).  If that were correct, the Court could presumably direct the Clerk of Court to open a new case (and require Alix to pay another filing fee).  But whether the Court treats Alix's motion as a request for leave to amend in this action or a request to file a new action asserting only the State Law Claims, he would encounter the same fatal obstacle: The newly filed complaint "would be subject to dismissal for want of subject matter jurisdiction."  *Raji v. Societe Generale Ams. Sec. LLC*, No. 15-CV-1144 (AT), 2016 WL 354033, at *2 (S.D.N.Y. Jan. 21, 2016).

13

Given the Court's prior Opinion, the only remaining potential basis for federal jurisdiction is diversity jurisdiction under 28 U.S.C. § 1332(a).  Alix pleads complete diversity between himself and Defendants, but he also admits that he brings his claims as an assignee of AlixPartners, and he does not even attempt to argue that complete diversity would exist if AlixPartners were named as a plaintiff.  *See* Compl. ¶ 29; ECF No. 105 ("Alix Jur. Mem."), at 1 (arguing that "diversity jurisdiction should be decided on the basis of Alix's citizenship" only).  Under 28 U.S.C. § 1359, however, "[a] federal court may not exercise diversity jurisdiction over 'civil actions in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court.'"  *Bugsby Prop. LLC v. Alexandria Real Estate Equities, Inc.*, No. 19-CV-9290 (VEC), 2020 WL 1974147, at *3 (S.D.N.Y. Apr. 24, 2020) (quoting 28 U.S.C. § 1359).  Section 1359 is construed "broadly to bar any agreement whose primary aim is to concoct federal diversity jurisdiction."  *Airlines Reporting Corp. v. S & N Travel, Inc.*, 58 F.3d 857, 862 (2d Cir. 1995) (internal quotation marks omitted).  Thus, whether the Court has diversity jurisdiction turns on whether Section 1359 applies.

Significantly, "[a]n assignment of interest among closely related entities or individuals triggers a presumption of collusion."  *Bugsby*, 2020 WL 1974147, at *3.  That presumption applies, among other things, to "assignments involving corporate directors and shareholders, due to their close ties and sufficient identity of corporate interests."  *Id.* (internal quotation marks omitted).  Here, Alix concedes that he is the founder of AlixPartners; that he was previously its controlling shareholder; and that he remains "an approximately 35 percent owner and a director."  Alix Decl. ¶¶ 19, 21-22.  In addition, he appears to have secured the assignment in his capacity as an owner and director of AlixPartners, after concluding that Defendants' conduct "was

harming" AlixPartners and needed to be corrected through litigation.  *Id.* ¶ 21, 23.  Accordingly, the presumption of collusiveness applies.

Relying on *Kramer v. Caribbean Mills, Inc.*, 394 U.S. 823 (1969), Alix argues that the presumption should not apply because the assignment was "absolute, with [AlixPartners] retaining no interest in the subject matter."  Alix Jur. Mem. 6-7 (quoting *Kramer*, 394 U.S. at 828 n.9).  In *Kramer* — which held that the assignment of claims to an attorney for $1 was collusive given "his total lack of previous connection with the matter and his simultaneous reassignment of a 95% interest back to [the assignor]," 394 U.S. at 827 — the Court observed in a footnote that it had "no occasion to re-examine the cases in which" the Court had "held that where the transfer of a claim is absolute, with the transferor retaining no interest in the subject matter, then the transfer is not 'improperly or collusively made,' regardless of the transferor's motive."  *Id.* at 828 n.9 (citing cases, from between 1891 and 1928, interpreting Section 1359's predecessor).  But that dictum is no longer the law, if it ever was.  In *Prudential Oil Corp. v. Phillips Petroleum Co.*, 546 F.2d 469 (2d Cir. 1976), which is binding on this Court, the Second Circuit analyzed *Kramer* and concluded that an assignment was presumptively collusive even though it transferred the entire interest in a claim and the assignor did not reserve any rights to the recovery.  *Id.* at 472, 474-76.  Subsequent cases have confirmed that whether the assignor retains an interest in the subject matter is merely a factor to consider in the analysis of whether the presumption is rebutted.  *Airlines Reporting Corp.*, 58 F.3d at 863; *accord Feinberg v. Katz*, No. 99-CV-0045 (CSH), No. 01-CV-2739 (CSH), 2005 WL 29900633, at *10-11 (S.D.N.Y. Nov. 7, 2005) (same); *see, e.g.*, *Gart v. McLean*, No. 87-CV-2235 (MJL), 1988 WL 75287, at *2 (S.D.N.Y. July 8, 1988) (rejecting an interpretation of *Kramer* similar to Alix's because

"*Prudential* is the binding precedent this Court must follow").  Accordingly, the Court concludes that the presumption applies here.

In order to overcome the presumption, Alix bears a "heavy burden of proof" to "articulate a legitimate business purpose for the assignment" and to "demonstrate that the reason given for the assignment is legitimate, not pretextual."  *LCE Lux HoldCo S.a.r.l. v. Entretenimiento GM de Mex. S.A. de C.V.*, 287 F.R.D. 230, 239 (S.D.N.Y. 2012) (internal quotation marks omitted).  In assessing whether Alix carries that burden, the Court must consider factors such as "(1) whether the assignor actually controls the conduct of the litigation; (2) the assignee's lack of a previous connection with the assigned claim or interest; (3) the lack of consideration given for the transfer; (4) the timing of the assignment; and (5) the underlying purpose of the transfer." *Bugsby*, 2020 WL 1974147, at *4.  "No single factor is dispositive."  *LCE Lux HoldCo*, 287 F.R.D. at 239.

Considering those factors here, the Court concludes that Alix fails to meet his heavy burden.  Indeed, only one factor — the second — arguably weighs in Alix's favor.  The first factor weighs against him, as his own declaration indicates that AlixPartners looms large in the conduct of the litigation.  Although Alix claims that he has "complete control over the prosecution of [AlixPartners's] claims against McKinsey," Alix Decl. ¶ 24, he also acknowledges that he sought the assignment in order to stop Defendants from "harming" AlixPartners and that he intends to conduct the litigation in order to "benefit" AlixPartners.  *Id.* ¶¶ 21-22.  The third factor also cuts against Alix, as he fails to submit the assignment agreement or otherwise show that any reasonable consideration was given for the assignment.  *See Bugsby*, 2020 WL 1974147, at *5 ("The transfer of [assignor's] membership interest is also suspect because it appears it lacked consideration."); *LCE Lux HoldCo*, 287 F.R.D. at 239 (noting as

significant that "in *Airlines Reporting* . . . there was no consideration provided for the assignment").  And the fourth factor also weighs against Alix, as the assignment occurred only a few months before this case was initially filed, in anticipation of the litigation.  *See* Alix Decl. ¶¶ 22-23.

Most importantly, the fifth factor — the underlying purpose of the transfer — weighs heavily against Alix.  Alix fails to offer any evidence of a legitimate business purpose for the assignment other than his own declaration, in which he states that the assignment allowed AlixPartners to "avoid the risk, burden, and expense of litigation, and at the same time benefit from McKinsey's compliance with bankruptcy disclosure laws."  *Id.*  ¶ 22; Alix Jur. Mem. 7. This vague and general rationale could apply to any assignment of claims to a related person or entity.  Alix fails to articulate why it would be in AlixPartners's business interests to give up its rights to litigate and recover on its claims, with the potential for treble and punitive damages as well as litigation "fees and costs," *see* Compl. Prayer for Relief ¶¶ (b)-(f) — all for little or no consideration.  Alix also offers his own desire to "maintain[] the integrity of the bankruptcy process," Alix Decl. ¶ 22, but a "plaintiff's personal interest" is not a legitimate business reason, *Mehmet v. Thompson*, No. 05-CV-7739 (LMM), 2007 WL 2728742, at *3 (S.D.N.Y. Sept. 13, 2007) (internal quotation marks omitted).  And even if Alix's justifications were business reasons, Alix also fails to prove that the "reason given for the assignment is legitimate, not pretextual."  *Airlines Reporting Corp.*, 58 F.3d at 863; *Bugsby*, 2020 WL 1974147, at *4 (rejecting a party's showing as "conclusory, unsupported, and insufficient to meet or overcome the presumption").  Finally, Alix emphasizes that the RICO Claims provided a separate basis for jurisdiction, suggesting that there was no need to use the assignment to create diversity jurisdiction.  *See* Alix Jur. Mem. 7.  But neither this fact nor Alix's claim that the assignment

was "absolute" carries much weight in light of the other circumstances surrounding the assignment.

Considering all of the relevant factors, the Court concludes that Alix does not overcome the presumption of collusiveness and, therefore, that Section 1359 bars the exercise of diversity jurisdiction over his State Law Claims.[3]   It follows that any new complaint — whether treated as an amended complaint in this action or as a fresh complaint in a new action — would be subject to dismissal without prejudice for lack of subject-matter jurisdiction.   Accordingly, leave to amend, assuming for the sake of argument that amendment is even an option, is denied as futile. *See, e.g.*, *Tocker v. Philip Morris Cos.*, 470 F.3d 481, 491 (2d Cir. 2006) (stating that leave to amend may be denied "when amendment would be futile").

### D.  Alix Is Not Entitled to an Order Precluding the State Law Claims in Federal Court

Alix's final request is that the Court "exercise its ongoing jurisdiction over this case to enter an order on Plaintiff's consent prohibiting the re-filing of the State Law Claims in federal court."  Alix Rule 54(b) Mem. 13-14.  But he cites no authority permitting, let alone requiring, the Court to do so.  And it is far from clear that the Court has such authority, as Alix's notice of voluntary dismissal deprived the Court of jurisdiction over the dismissed claims, *see, e.g.*, *U.S. D.I.D. Corp. v. Windstream Commc'ns, Inc.*, 775 F.3d 128, 134 (2d Cir. 2014), and the Court

---

[3]      In light of that conclusion, Defendants' request for "limited jurisdictional discovery" is moot.  *See* Defs.' Dismissal Mem. 7 (proposing "limited jurisdictional discovery").  Alix had ample opportunity to demonstrate that the assignment was valid and that complete diversity exists.  *See Krechmer v. Tantaros*, 747 F. App'x 6, 11 (2d Cir. 2018) (summary order) (affirming the denial of jurisdictional discovery where "[p]laintiff had ample time . . . to obtain discovery on this key jurisdictional issue").  Indeed, if there were evidence to rebut the presumption of collusiveness, it would be in Alix's or AlixPartners's possession, and Alix presumably would have produced it.

may not impose conditions on claims that are voluntarily dismissed by notice under Rule

41(a)(1)(A)(i), as the State Law Claims were.  Accordingly, Alix's final request is denied.

## CONCLUSION

In sum, for the reasons stated above, the Court holds that:

(1) Alix's voluntary dismissal of the State Law Claims was effective because those claims were the only claims remaining after the Court's dismissal of the RICO Claims and, thus, constituted the "action" for purposes of Rule 41(a)(1);

(2) Alix's voluntary dismissal was self-executing and effective immediately and, thus, could not be withdrawn by Alix or vacated by the Court;

(3) Alix is not entitled to entry of judgment on his RICO Claims pursuant to Rule 54(b), because he filed his motion after the State Law Claims were dismissed and, thus, the RICO Claims were the only claims in the case and, in any event, because entry of judgment would undermine the well-established rule that dismissal of some claims without prejudice does not give rise to a final, appealable judgment;

(4) Alix cannot amend, or file a new action, to revive his State Law Claims because he fails to carry his burden of showing that the assignment from AlixPartners to him was not collusive and, thus, the Court lacks subject-matter jurisdiction over the State Law Claims; and

(5) Alix fails to show that the Court can, or should, enter an order precluding him from bringing the State Law Claims in any federal court.

Accordingly, Alix's motions are DENIED.  That may or may not leave Alix with an avenue to

appeal the Court's ruling dismissing his RICO Claims — the initial motivation for his voluntary

dismissal of the State Law Claims and the primary goal of his subsequent procedural maneuvers.

*Compare, e.g.*, *Chappelle*, 84 F.3d at 654 (dismissing for lack of jurisdiction an appeal from the

district court's ruling on a motion to dismiss where the plaintiff had thereafter voluntarily

dismissed her remaining claims without prejudice), *with Hill v. Didio*, 191 F. App'x 13, 15 (2d

Cir. 2006) (summary order) (hearing an appeal of a decision dismissing RICO claims on the

merits and dismissing state-law claims for lack of subject matter jurisdiction).  But that is a

question for another day and presumably for the Second Circuit, not for this Court.

The Clerk of Court is directed to terminate ECF No. 123 and close the case.


SO ORDERED.

Dated: July 6, 2020
     New York, New York

                                           JESSE M. FURMAN
                                   United States District Judge