Case 1:18-cv-01841-JMF    Document 297-3    Filed 01/17/24    Page 1 of 35

prepetition. If your billing rates and material financial terms have changed post-petition, explain the difference and the reasons for the difference.

**Response**: K&K did not represent the Creditors' Committee prior to the commencement of the Debtors' chapter 11 cases.

**Question**: Has your client approved your prospective budget and staffing plan, and, if so, for what budget period?

**Response**: K&K is developing a budget and staffing plan for September 15, 2016 through October 31, 2016 that will be presented for approval by the Creditors' Committee.

19.     The foregoing constitutes the statement of K&K pursuant to sections 504

and 1103 of the Bankruptcy Code and Bankruptcy Rules 2014(a) and 2016(b).

I declare under penalty of perjury that, to the best of my knowledge and after

reasonable inquiry, the foregoing is true and correct.

Executed this 7th day of October, 2016

_____
Michael S. Kim
Member, Kobre & Kim LLP

## Schedule 1

### Interested Parties

| Category | Party in Interest |
|---|---|
| Debtor | Enflex Corporation |
| Debtor | First Wind California Holdings, LLC |
| Debtor | First Wind Solar Portfolio, LLC |
| Debtor | Fotowatio Renewable Ventures, Inc. |
| Debtor | MEMC Pasadena, Inc. |
| Debtor | NVT Licenses, LLC |
| Debtor | NVT, LLC |
| Debtor | PVT Solar, Inc. |
| Debtor | SEV Merger Sub Inc. |
| Debtor | Silver Ridge Power Holdings, LLC |
| Debtor | Solaicx |
| Debtor | Sun Edison LLC |
| Debtor | SUNE Hawaii Solar Holdings, LLC |
| Debtor | SUNE ML 1, LLC |
| Debtor | SUNE Wind Holdings, Inc. |
| Debtor | SunEdison Canada, LLC |
| Debtor | SunEdison Contracting, LLC |
| Debtor | SunEdison DG, LLC |
| Debtor | SunEdison Holdings Corporation |
| Debtor | SunEdison International, Inc. |
| Debtor | SunEdison International, LLC |
| Debtor | SunEdison Products Singapore Pte. Ltd. |
| Debtor | SunEdison Residential Services, LLC |
| Debtor | SunEdison Utility Holdings, Inc. |
| Debtor | SunEdison, Inc. |
| Debtor | Team-Solar, Inc. |
| Debtor | Blue Sky West Capital, LLC |
| Debtor | DSP Renewables, LLC |
| Debtor | First Wind Oakfield Portfolio, LLC |
| Debtor | First Wind Panhandle Holdings III, LLC |
| Debtor | Hancock Renewables Holdings, LLC |
| Debtor | Sunflower Renewable Holdings 1, LLC |
| Debtor Affiliate | Buckthorn Renewables Holdings, LLC |
| Debtor Affiliate | Rocksprings Wind Renewables, LLC |
| Debtor Affiliate | Upco Power Renewable Holdings 1, LLC |
| Executive Officers (last 5 years) | Ahmad Chatila |
| Executive Officers (last 5 years) | Bradley Kohn |

| Category | Party in Interest |
|---|---|
| Executive Officers (last 5 years) | Brian Wuebbels |
| Executive Officers (last 5 years) | Carlos Domenech Zornoza |
| Executive Officers (last 5 years) | David Ranhoff |
| Executive Officers (last 5 years) | Denis McCarthy |
| Executive Officers (last 5 years) | Kenneth Hannah |
| Executive Officers (last 5 years) | Mark Murphy |
| Executive Officers (last 5 years) | Martin Truong |
| Executive Officers (last 5 years) | Matthew Herzberg |
| Executive Officers (last 5 years) | Michael Alvarez |
| Executive Officers (last 5 years) | Pashupathy Gopalan |
| Executive Officers (last 5 years) | Paul Gaynor |
| Executive Officers (last 5 years) | Scott Weisberg |
| Executive Officers (last 5 years) | Sean Hunkler |
| Executive Officers (last 5 years) | Shaker Sadasivam |
| Executive Officers (last 5 years) | Stephen Cerrone |
| Executive Officers (last 5 years) | Stephen O'Rourke |
| Executive Officers (last 5 years) | Tamara Mullings |
| Executive Officers (last 5 years) | Vijayan Chinnasami |
| Executive Officers (last 5 years) | Vikas Desai |
| Board Members (last 5 years) | Ahmad Chatila |
| Board Members (last 5 years) | Antonio Alvarez |
| Board Members (last 5 years) | C. Douglas Marsh |
| Board Members (last 5 years) | Claire Gogel |
| Board Members (last 5 years) | Clayton Daley |
| Board Members (last 5 years) | Emmanuel Hernandez |
| Board Members (last 5 years) | Georganne Proctor |
| Board Members (last 5 years) | James Williams |
| Board Members (last 5 years) | Jeffry Quinn |
| Board Members (last 5 years) | John Marren |
| Board Members (last 5 years) | Marshall Turner |
| Board Members (last 5 years) | Peter Blackmore |
| Board Members (last 5 years) | Randy Zwirn |
| Board Members (last 5 years) | Robert Boehlke |
| Board Members (last 5 years) | Steven Tesoriere |
| Board Members (last 5 years) | William Stevens |
| Director Affiliate | Aruba Networks, Inc. |
| Director Affiliate | ChipMOS Technologies |
| Director Affiliate | DuPont Photomasks, Inc. |
| Director Affiliate | Entegris Inc. |
| Director Affiliate | Griswold LLC |
| Director Affiliate | OCH-ZIFF Capital Management |
| Director Affiliate | ON Semiconductor Corp. |
| Director Affiliate | QuickLogic Corp. |
| Director Affiliate | Redwood Trust, Inc. |

| Category | Party in Interest |
|---|---|
| Director Affiliate | Semi-Sematech |
| Director Affiliate | Starwood Hotels and Resorts, Inc. |
| Director Affiliate | SunEdison Semiconductor Limited |
| Director Affiliate | TerraForm Power, Inc. |
| Director Affiliate | W.R. Grace |
| Institutional Shareholders > 1% | Adage Capital Management, L.P. |
| Institutional Shareholders > 1% | Altai Capital Management, L.P. |
| Institutional Shareholders > 1% | Alyeska Investment Group, L.P. |
| Institutional Shareholders > 1% | Bank of America Merrill Lynch (US) |
| Institutional Shareholders > 1% | BlackRock Institutional Trust Company, N.A. |
| Institutional Shareholders > 1% | BNP Paribas Securities Corp. North America |
| Institutional Shareholders > 1% | Bronte Capital Management Pty Ltd. |
| Institutional Shareholders > 1% | D. E. Shaw & Co., L.P. |
| Institutional Shareholders > 1% | Deutsche Bank Securities Inc. |
| Institutional Shareholders > 1% | Fidelity Management & Research Company |
| Institutional Shareholders > 1% | Goldman Sachs & Company, Inc. |
| Institutional Shareholders > 1% | Greenlight Capital, Inc. |
| Institutional Shareholders > 1% | Guggenheim Investments |
| Institutional Shareholders > 1% | Luxor Capital Group, L.P. |
| Institutional Shareholders > 1% | Norges Bank Investment Management (NBIM) |
| Institutional Shareholders > 1% | OppenheimerFunds, Inc. |
| Institutional Shareholders > 1% | Putnam Investment Management, L.L.C. |
| Institutional Shareholders > 1% | State Street Global Advisors (US) |
| Institutional Shareholders > 1% | Susquehanna Financial Group, LLLP |
| Institutional Shareholders > 1% | The Vanguard Group, Inc. |
| Institutional Shareholders > 1% | UBS Securities LLC |
| Institutional Shareholders > 1% | Van Eck Associates Corporation |
| Institutional Shareholders > 1% | Wellington Management Company, LLP |
| Transfer Agent | Computershare Investor Services, L.L.C. |
| Collateral Trustee | Wilmington Trust, NA |
| Convertible Trustee | Wilmington Trust, NA |
| Debtors Professionals | Kekst |
| Debtors Professionals | McKinsey & Co. |
| Debtors Professionals | Prime Clerk, LLC |
| Debtors Professionals | Rothschild |
| Debtors Professionals | Skadden, Arps, Slate, Meagher & Flom LLP and Affiliates |
| Debtors Professionals | Togut, Segal & Segal LLP |
| 1st Lien Professionals | BRG Capstone |
| 1st Lien Professionals | Latham & Watkins LLP |
| 1st Lien Professionals | Shearman & Sterling LLP |
| 1st Lien Professionals | White & Case LLP |
| 2nd Lien Professionals | Akin Gump Strauss Hauer & Feld LLP |
| 2nd Lien Professionals | Houlihan Lokey |

| Category | Party in Interest |
|---|---|
| Customers | U.S. Virgin Islands Water and Power Authority |
| Customers | UC Berkeley |
| Customers | Unimin Corporation |
| Customers | Unknown Host (MA) |
| Customers | Unknown Offtaker |
| Customers | Unknown Offtaker (VT) |
| Customers | UTE |
| Customers | Uttarpradesh New and Renewable Energy Development Agency |
| Customers | Vepp Inc. |
| Customers | W.J. Bradley Mortgage Capital, LLC |
| Customers | Walgreen Eastern Co., Inc. |
| Customers | Wal-Mart Puerto Rico, Inc. |
| Customers | Wal-Mart Stores Inc. |
| Customers | WGSW, Inc. |
| Customers | Whirlpool of India Ltd |
| Customers | Whole Foods |
| Customers | Woods Hole Oceanographic Institution |
| Customers | XCEL MN |
| Customers | Xcel PSCO |
| Customers | YMCA of Southern Arizona |
| Litigant | ABHISHEK AGRAWAL |
| Litigant | Ace Industries, Inc. (Vericore, LLC - collections agency) |
| Litigant | AIG Property Casualty Co. as subrogee of John Paul DeJoria |
| Litigant | AIG Specialty Insurance Co. f/k/a Chartis Specialty Insurance Co. Xtreme Power, Inc. Xtreme Power Systems, LLC and Xtreme Power Grove, LLC also defendants |
| Litigant | Akuo Energy |
| Litigant | Albemarle Corporation |
| Litigant | Alexander Y. Usenko |
| Litigant | Alma Canez |
| Litigant | Aman Maharaj |
| Litigant | ANTON S. BADRI |
| Litigant | Appaloosa Investment Limited Partnership I |
| Litigant | Arnie Williams |
| Litigant | ATLANTIC SPECIALTY INSURANCE COMPANY |
| Litigant | BAG Corp |
| Litigant | Balwara, LLC and Baraa Shaheen |
| Litigant | Baraa Shaheen |

**Schedule 2**

**Current and Former Clients**

| Relationship to Debtors | Matched Entity | Relationship to Kobre & Kim |
|---|---|---|
| Insurance Providers | AIG Insurance Co | Affiliate of Former Client |
| Litigant | AIG Specialty Insurance Co. f/k/a Chartis Specialty Insurance Co. Xtreme Power, Inc. Xtreme Power Systems, LLC and Xtreme Power Grove, LLC also defendants | Affiliate of Former Client |
| Convertible Note Holders | Allianz SE | Affiliate of Current Client |
| Vendors | American Express | Former Client |
| Litigant | Balwara, LLC and Baraa Shaheen | Former Client |
| Litigant | Baraa Shaheen | Affiliate of Former Client |
| Utilities | Cablevision Systems Corp. | Current Client |
| 2nd Lien Lenders | Credit Suisse | Former Client |
| Convertible Note Holders | Credit Suisse Asset Management | Affiliate of Former Client |
| Uniform Commercial Code List | CSC | May Be Affiliate of Current Client |
| 2002 List | Davis Polk & Wardwell LLP | Former Client |
| 2nd Lien Lenders | Deutsche Bank | Former Client |
| LC Issuers | Deutsche Bank | Former Client |
| Convertible Note Holders | Deutsche Bank AG | Former Client |
| Institutional Shareholders > 1% | Deutsche Bank Securities Inc. | Former Client |
| Litigant | E.I. du Pont de Nemours and Company | Current Client |

| Relationship to Debtors | Matched Entity | Relationship to Kobre & Kim |
|---|---|---|
| 2nd Lien Lenders | Elliott Management | Current Client |
| Vendors | HEFEI JA SOLAR TECHNOLOGY CO LTD | Affiliate of Potential Client |
| 2nd Lien Professionals | Houlihan Lokey | Current Client |
| Vendors | JA Solar | Potential Client |
| Vendors | JA SOLAR TECHNOLOGY YANGZHOU CO LTD | Affiliate of Potential Client |
| Uniform Commercial Code List | Morgan Stanley Bank, N.A. | Affiliate of Current Client |
| Customers | Morgan Stanley Renewables Inc. | Affiliate of Current Client |
| Customers | Morgan Stanley, Inc. | Affiliate of Current Client |
| Director Affiliate | OCH-ZIFF Capital Management | Former Client |
| Ordinary Course Professionals | Price Waterhouse Coopers LLP | Affiliate of Former Client |
| Vendors | Shanghai JA Solar Technology | Affiliate of Potential Client |

**EXHIBIT L**

**Sunday, January 14, 2024 at 08:42:44 Pacific Standard Time**

---

**Subject:** SunEdison Creditors Seek to Undo Lenders' 'Sweetheart Deal' - Bloomberg
**Date:** Friday, March 31, 2017 at 12:05:58 PM Pacific Daylight Time
**From:** Baraa Shaheen <baraa.shaheen@balwara.com>
**To:** Jonathan D. Cogan <Jonathan.Cogan@kobrekim.com>

Hi Jon,

Was great talking to you today.

I didn't quite understand the unsecured credit committee's role I when we spoke earlier today but now I have a better understanding after looking up proceedings related to SUNE's Unsecured Credit Committee and other general information about the committee's function.

It's interesting the work done so far by K&K but I think it's only touching the surface.

https://www.bloomberg.com/news/articles/2016-10-21/sunedison-creditors-seek-to-undo-sweetheart-deal-to-lenders

In any event, I hope I can add value to current efforts.  I look forward to touching base next week.

Best,
Baraa Shaheen
Managing Partner, Balwara
M(USA): +1.415.568.6805
M(KSA): +966.55.601.1146

**EXHIBIT M**

**Sunday, January 14, 2024 at 08:26:03 Pacific Standard Time**

---

**Subject:** LEGAL ACTION IMMINENT — SETTLEMENT DEMAND
**Date:** Thursday, January 13, 2022 at 3:02:00 AM Pacific Standard Time
**From:** Baraa Shaheen <baraa.shaheen@balwara.com>
**To:** James G Coulter <jcoulter@tpg.com>, robert_sternfels@mckinsey.com
<robert_sternfels@mckinsey.com>

Dear Messers, Coulter and Sternfels:

Please make note that we intend to file legal action against TPG, McKinsey, and other co-conspirators for damages resulting from, and/or enabled by, the "SunEdison Protocol" which may also be known as the "MEMC Protocol."

As a result of your actions, we are seeking relief in the form of a payment in the amount of one billion five hundred million dollars ($1,500,000,000.00).

This offer to cure and/or settle this matter outside of federal district court and avoid a lawsuit is valid for 30 days from the "Effective Date" which is the date of this email.

Regards,

Baraa Shaheen
Founder & Managing Partner
Balwara, LLC
P.O. Box 191073
San Francisco CA, 94119

**Subject:** Re: Discussion re: TPG Capital & SunEdison
**Date:** Tuesday, February 7, 2023 at 8:49:32 AM Pacific Standard Time
**From:** Baraa Shaheen <baraa.shaheen@balwara.com>
**To:** gassan_al-kibsi@mckinsey.com <gassan_al-kibsi@mckinsey.com>

Good evening Gassan:

Following up on my information request below.

By the way, congrats on your promotion to Managing Partner, Middle East & North Africa!

McKinsey's attempts to influence my attorneys advice is going to backfire on the firm.

Best,

Baraa

Sent from my iPhone

> On Mar 16, 2021, at 4:54 AM, Baraa Shaheen <baraa.shaheen@balwara.com> wrote:
>
> Hi Gassan:
>
> Following up on the below email.
>
> Best,
> Baraa Shaheen
> Founder & Managing Partner
> Balwara, LLC
>
>> On May 8, 2020, at 10:16 AM, Baraa Shaheen <baraa.shaheen@balwara.com> wrote:
>>
>> Hello Gassan:
>>
>> I am following up on my below email with a couple more requests.
>>
>> - Kindly confirm that Jerome Vascellaro, TPG's COO and McKinsey's former COO, is not an investor/participant in MIO, and;

- Kindly provide who is the DCS for McKinsey's client, GCL-Poly, which was intentionally omitted from the interested party list in SunEdison bankruptcy petition.

I look forward to your response in a timely manner consistent with McKinsey's 'professionalism.'

Best,
Baraa Shaheen
Founder & Managing Partner
Balwara LLC

On Apr 28, 2020, at 1:54 AM, Baraa Shaheen <baraa.shaheen@balwara.com> wrote:

Hi Gassan:

Ramadan Mubarak.  I hope you and the family are well and in good health and spirits.

It's been quite a while since we last met in Riyadh on October 10, 2017 where I informed you that TPG Capital is behind the insolvency of SunEdison in a similar fashion to the insolvency of Caesars Entertainment Co. and TIM Hellas.

As you know, Balwara LLC, is an unsecured creditor of SunEdison and has suffered a great deal of harm.

Would you kindly connect me with Mr. Bob Sternfels and Mr. Gary Pinkus, TPG's DCS's, as I would like to discuss with them McKinsey's disclosures in the employment application made to the bankruptcy court which omits the TPG Capital Relationship.

In particular, and among other misrepresentations, the omission of John Marren in the multiple sworn decelerations submitted to the bankruptcy court is a material omission given the fact that he was the chairman of SunEdison from Nov 11, 2001 to Dec 31, 2012 and should have been clearly disclosed.  It is evident that TPG is trying to escape from liability.

Additionally,  would you kindly confirm who is the current global leader of the Private Equity & Principle Investor practice at McKinsey.

I look forward to connecting with Messers Sternfels and Pinkus and discussing the above mentioned issues.

Best,
Baraa Shaheen
Founder & Managing Partner
Balwara LLC



Sign In | Subscribe

EN



# Gassan Al-Kibsi

Senior Partner, Chair and Managing Partner, EEMA, Riyadh

Supports public-, private-, and social-sector leaders across the region to improve opportunities for the youth and create global champions

---

**ABOUT GASSAN**

Gassan is a senior partner, chair, and managing partner for the firm's work in Middle East, Africa,

Central Asia and Turkey (EEMA), and leads a team of over 180 partners and more than 2,400 colleagues across the region. He serves in several global roles within McKinsey, including as a member of the firm's board of directors and as a present member of its global leadership team, the Shareholders' Council.

Gassan is passionate about supporting leaders on matters of economic growth and job creation for young people. Since 2000, he has been working with the public, private, and social sectors across the

---

**EXPERTISE**

> Public Sector

> Regulatory Strategy

> Oil & Gas

> Private Equity & Principal Investors

> Strategy & Corporate Finance

McKinsey
& Company

Private Equity & Principal Investors

Sign In | Subscribe



# Private equity

We help private equity firms make better investment decisions at every stage of the deal life cycle and build greater returns through active management of portfolio companies. We also advise on investment firm strategy and development, creating value through improved performance.

We are the leading advisor to the private equity industry. Our work is driven by the collaboration of partners, advisors, and specialists with a deep understanding of private equity and the intricacies of the investment lifecycle. With over 9,500 consultants working in 107 offices spanning more than 60 countries, our scale and scope bring unparalleled insights across industries, geographies, and operational areas, allowing us to offer a fundamentally different approach to private equity consulting.

# What we do

We help private equity firms create greater returns at every stage in the investment cycle and strengthen firm strategy and development.

- **Investment screening.** Our work with clients in pre-diligence investment screening is varied and tailored to their specific needs. We help identify and qualify investment opportunities by leveraging a systematic process to screen and reveal potential targets and provide proactive, investable insights and thematic ideas. We also offer in-depth, customized workshops and access to proprietary research and data.

- **Due diligence.** Our approach to due diligence is flexible and analytics-driven, incorporating extensive proprietary knowledge and deep industry experience. We help clients evaluate the outlook and opportunities with investment targets across all sectors, drawing on the knowledge of more than 1400 partners, each with specific business expertise. Our flexible model allows for a wide range of potential configurations, from targeted analysis to fully-integrated due diligence.

- **Portfolio development.** We help clients develop and execute aggressive, targeted plans of action for the first 100 days post-closing to capture near-term opportunities and ensure the success of their investment. Beyond the first 100 days, our support is focused on near-medium term improvement models, developed with an exit strategy in mind, and aimed at transforming the performance of portfolio companies in high-impact areas.

  Portfolio projects are customized, with scale and timing driven by client need. Our services range from rapid assessments of portfolio company business capabilities to comprehensive turnaround of performance, redesigning processes, operations, and products from the ground up.

- **Exit support.** We help company owners to prepare for a maximum-value exit using a three-phase support model that covers planning, preparation, and execution for auctions and initial public offerings. We work with clients to develop and communicate clear and coherent business plans and offer seven core support modules, including sell-side documentation for bidders and financers. McKinsey has extensive exit experience across industries, with more than 450 projects in the last decade. We bring an informed view of industry-shaping trends, a clear line of sight on key risks and how they might affect the business, and deep understanding of the buyer landscape and preferred exit route.

- **Firm strategy and development.** Combining deep insights on global macroeconomic trends with proprietary research on market trends, we help clients make strategic choices to increase fund and firm performance, including how to establish competitive positioning, how to adapt investment processes, how to settle on an investment strategy, and how to evolve their governance structure. We also provide support for operational improvement, including risk management and business support capabilities.

- **RTS.** For especially challenging cases, including distressed companies and underperforming business units, we call on the expertise of RTS. This special unit focuses exclusively on radical and sustained performance improvement in all industries and geographies, and has a robust track record of high impact turnarounds with a focus on generating value.

- **McKinsey Implementation.** Our clients have access to McKinsey Implementation services, specialist teams that are available to work side-by-side with portfolio companies, offering tailored support to help accelerate the execution of recommendations and improvement plans. McKinsey Implementation teams work across industries and geographies on a wide variety of projects, helping companies achieve rapid, significant, and measureable bottom-line results.

---

**FEATURED EXPERTS**



**Alex Panas**

Senior Partner, Boston



## Gary Pinkus

Senior Partner, Bay Area



## Fredrik Dahlqvist

Senior Partner, Stockholm



## Vivek Pandit

Senior Partner, Mumbai

**More people** →

---

RELATED INSIGHTS





Collection

# McKinsey on Investing

*November 1, 2019 -* The best of our recent research and ideas for investors.
*McKinsey on Investing* draws on the perspectives and…

---

**HOW WE HELP CLIENTS**

> Private equity

> Institutional investors

**Back to practice overview** →

**EXHIBIT N**

COLE SCHOTZ P.C.
1325 Avenue of the Americas, 19th Floor
New York, New York 10019
Telephone: (212) 752-8000
Facsimile: (212) 752-8393
David R. Hurst
Daniel F.X. Geoghan

*Counsel to the SunEdison Litigation Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| SUNEDISON, INC., *et al.*, | : | Case No. 16-10992 (SMB) |
| Reorganized Debtors.[1] | : | (Jointly Administered) |
| | : | |

**STIPULATION BY AND AMONG THE SUNEDISON**
**LITIGATION TRUST AND MCKINSEY & COMPANY, INC.,**
**CERTAIN SUBSIDIARIES AND MCKINSEY RECOVERY & TRANSFORMATION**
**SERVICES U.S., LLC COMPROMISING CLAIMS AND CAUSES OF ACTION**

---

[1]  The Reorganized Debtors in these chapter 11 cases, along with the last four digits of each Reorganized Debtor's tax identification number, are as follows: SunEdison, Inc. (5767); SunEdison DG, LLC (N/A); SUNE Wind Holdings, Inc. (2144); SUNE Hawaii Solar Holdings, LLC (0994); First Wind Solar Portfolio, LLC (5014); First Wind California Holdings, LLC (7697); SunEdison Holdings Corporation (8669); SunEdison Utility Holdings, Inc. (6443); SunEdison International, Inc. (4551); SUNE ML 1, LLC (3132); MEMC Pasadena, Inc. (5238); Solaicx (1969); SunEdison Contracting, LLC (3819); NVT, LLC (5370); NVT Licenses, LLC (5445); Team-Solar, Inc. (7782); SunEdison Canada, LLC (6287); Enflex Corporation (5515); Fotowatio Renewable Ventures, Inc. (1788); Silver Ridge Power Holdings, LLC (5886); SunEdison International, LLC (1567); Sun Edison LLC (1450); SunEdison Products Singapore Pte. Ltd. (7373); SunEdison Residential Services, LLC (5787); PVT Solar, Inc. (3308); SEV Merger Sub Inc. (N/A); Sunflower Renewable Holdings 1, LLC (6273); Blue Sky West Capital, LLC (7962); First Wind Oakfield Portfolio, LLC (3711); First Wind Panhandle Holdings III, LLC (4238); DSP Renewables, LLC (5513); Hancock Renewables Holdings, LLC (N/A); EverStream HoldCo Fund I, LLC (9564); Buckthorn Renewables Holdings, LLC (7616); Greenmountain Wind Holdings, LLC (N/A); Rattlesnake Flat Holdings, LLC (N/A); Somerset Wind Holdings, LLC (N/A); SunE Waiawa Holdings, LLC (9757); SunE Minnesota Holdings, LLC (8926); SunE MN Development Holdings, LLC (5388); SunE MN Development, LLC (8669); Terraform Private Holdings, LLC (5993); Hudson Energy Solar Corporation (3557); SunE REIT-D PR, LLC (5519); SunEdison Products, LLC (4445); SunEdison International Construction, LLC (9605); Vaughn Wind, LLC (4825); Maine Wind Holdings, LLC (1344); First Wind Energy, LLC (2171); First Wind Holdings, LLC (6257); and EchoFirst Finance Co., LLC (1607). The address of the Reorganized Debtors' corporate headquarters is Two CityPlace Drive, 2nd floor, St. Louis, MO 63141.

The SunEdison Litigation Trust (the **"Litigation Trust"**) and McKinsey & Company, Inc. and its wholly-owned subsidiaries (collectively, **"McKinsey & Co."**), McKinsey & Company, Inc. United States (**"McKinsey & Co. U.S.,"** and together with McKinsey & Co., **"McKinsey"**), and McKinsey Recovery & Transformation Services U.S., LLC (**"RTS,"** and, together with McKinsey and the Litigation Trust, the **"Parties"**) hereby enter into this stipulation (the **"Stipulation"**) and agree as follows:

## RECITALS

**WHEREAS**, beginning on April 21, 2016 (the **"Petition Date"**), SunEdison, Inc. and certain of its affiliates and subsidiaries (collectively, the **"Debtors"**) filed with the United States Bankruptcy Court for the Southern District of New York (the **"Bankruptcy Court"**) voluntary petitions for relief under chapter 11 of title 11 of United States Code, 11 U.S.C. § 101, *et seq.* (the **"Bankruptcy Code"**); and

**WHEREAS**, on March 28, 2017, the Debtors filed their Joint Plan of Reorganization of SunEdison, Inc. and its Debtor Affiliates [Docket No. 2671] (as amended from time to time, the **"Plan"**); and

**WHEREAS**, on July 28, 2017, the Bankruptcy Court entered the Findings of Facts, Conclusions of Law and Order Confirming Second Amended Plan of Reorganization of SunEdison, Inc. and its Debtor Affiliates [Docket No. 3735] (the **"Confirmation Order"**), thereby approving the Plan and the GUC/Litigation Trust Agreement (the **"Litigation Trust Agreement"**); and

**WHEREAS**, on December 29, 2017, the Plan became effective [Docket No. 4495] (the **"Plan Effective Date"**); and

2

**WHEREAS**, on the Plan Effective Date, all of the Debtors' rights, title and interests in the GUC/Litigation Trust Causes of Action (as that term is defined in the Plan, the **"GUC/Litigation Trust Causes of Action"**), including the claims and causes of action asserted by the Litigation Trust against McKinsey and RTS, were transferred to the Litigation Trust; and

**WHEREAS**, on the Plan Effective Date, Drivetrain, LLC was appointed as the trustee (the **"Litigation Trustee"**) for the Litigation Trust; and

**WHEREAS**, pursuant to Section 7.6(b) of the Plan, the Litigation Trust is authorized to settle, release and compromise the GUC/Litigation Trust Causes of Action without further approval of the Bankruptcy Court; and

**WHEREAS**, McKinsey and RTS assert that the GUC/Litigation Trust Causes of Action asserted by the Litigation Trust against different McKinsey entities and RTS lack merit and are subject to various defenses and, if litigated, ultimately would be subject to dismissal; and

**WHEREAS**, McKinsey and RTS have concluded that the compromise and settlement embodied herein is in the best interests of McKinsey and RTS, considering, among other things, the cost, expense and delay associated with litigating the disputed matters and issues, the result of which is uncertain; and

**WHEREAS**, the Litigation Trust has concluded that the compromise and settlement embodied herein is in the best interests of the beneficiaries of the Litigation Trust, considering, among other things, the cost, expense and delay associated with litigating the disputed matters and issues, the result of which is uncertain.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED**, by and between the Litigation Trust, McKinsey and RTS:

VNY - 002510/000015 - 9685228 v5

## STIPULATION

1.    McKinsey and RTS shall deliver an executed copy of this Stipulation to

Cole Schotz P.C. at the address set forth on the signature page of this Stipulation on or before

December 31, 2018. McKinsey and/or RTS shall transmit payment (collectively) in the amount

of $17,500,000 (the "**Settlement Payment**") on or before December 31, 2018.

2.    The Settlement Payment shall be transmitted  by wire, using the wire

instructions set forth immediately below:

| | |
|---|---|
| Beneficiary: | SunEdison Litigation Trust |
| Account Address: | 630 3rd Avenue, 21 FL |
| | c/o Drivetrain, LLC |
| | New York, NY 10017 |
| Account No.: | 2469708032 |
| Routing No.: | 121000248 |
| SWIFT Code: | WFBIUS6S |
| Bank Name: | Wells Fargo Private Bank |

3.    Upon (i) execution and delivery of this Stipulation and (ii) timely and

complete payment of the Settlement Payment in the manner set forth in paragraphs 1 and 2, this

Stipulation shall become fully effective (the "**Settlement Effective Date**"); provided that if the

Settlement Effective Date does not occur on or before December 31, 2018, this Stipulation shall

become null and void.

4.    Because paragraphs 8, 9 and 10 of this Stipulation are an essential

component of McKinsey's bargained for consideration, the Trust shall not distribute $8,500,000

of the Settlement Payment (the "**Reserve Amount**") until after June 30, 2019 (the "**End Date**").

If McKinsey and/or RTS believes there has been a breach of paragraphs 8, 9 and/or 10 of this

Stipulation by the Litigation Trust, the GUC/Litigation Trust Oversight Board (as defined in the

chapter 11 plan attached to the Confirmation Order) (the "**Oversight Board**") and/or their

respective advisors prior to the End Date, McKinsey and/or RTS shall provide written

4



# L. Spencer Wells



PARTNER

✉ swells@drivetrainadvisors.com
📞 212 856 9700 x3

↗ email this page
⬇ download vcard

PROFILE

Executive with extensive director and management experience in hedge funds, specializing in distressed debt and equities. Investing and operations expertise in domestic/international industries. Audit Committee eligible experienced board member.

Primary skills include bankruptcy and restructuring

**PARTNER / DIRECTOR**

**EXPERIENCE**

2012-Present TPG Special Situations Partners, San Francisco, CA — Senior Advisor

2010-2012 TPG Special Situations Partners, San Francisco, CA — Partner

As Senior Advisor, assist in the sourcing and diligence process for new investments. As Partner, Senior member of a team of investment professionals responsible for creating and managing a $2.5B portfolio of distressed credit investments employing a "distressed for control" investment strategy.

https://web.archive.org/web/20190308045402/http://drivetrainadvisors.com/spencer-wells/

**EXHIBIT O**

TABLE OF CONTENTS

*FRAUD ON THE COURT SCHEME PARTICIPANT ROLES* ...................................................................*4*

*THE PARTIES* .................................................................................................................................*7*

*NATURE OF THE CASE* ....................................................................................................................*8*

*IMPORTANT BACKGROUND* ...........................................................................................................*10*

    *I.  Bankruptcy Rings* ..............................................................................................................*10*

        a)    1920's Bankruptcy Rings ...............................................................................10

        b)    Modern-Day Rings: Hub-and-Spoke Enterprises Sponsored by Private Equity.....................11

    *II. McKinsey's Legal Issues Surface* ....................................................................................*13*

        a)    U.S. DOJ Criminal Investigation into Bankruptcy Conduct in SunEdison .............13

        b)    South African Criminal Charges ...............................................................................13

    *III.    TPG's Legal Issues* ....................................................................................................*15*

        a)    TPG Continues to Face Bankruptcy-Related Scandals .............................................15

        b)    TPG Commits Collusion in Violation of Antitrust Laws...........................................17

        c)    TPG Manipulated Investment Performance Figures to Exclude Bankrupt Portfolio Companies............18

*FACTUAL BACKGROUND* ...............................................................................................................*19*

    *IV.TPG's Relationship with SunEdison* ...............................................................................*19*

        a)    TPG Controlled SunEdison (f/k/a MEMC) Since 2001 .............................................19

        b)    TPG Faces Material Risk in SunEdison .....................................................................20

        c)    TPG Divested from SunEdison by 2008 but Retained Control of the Board to Manage Liabilities .......21

        d)    TPG Devises Plan to Put SunEdison into Bankruptcy and Installs New CEO ...........22

        e)    SunEdison's CEO Devises Insider Pre-Petition Asset-Transfer Schemes...................23

    *V. Balwara's Relationship with SunEdison* ..........................................................................*23*

        a)    Goldman Sachs Introduces Balwara to Shihab Kuran .............................................23

        b)    Kuran Invites Balwara to Meet SunEdison's CEO ....................................................24

        c)    SunEdison Entices Balwara into a Consulting Agreement .......................................24

        d)    SunEdison Entraps Balwara into a Pre-Petition Asset-Transfer Scheme ...................24

        e)    SunEdison's CEO Engages in Cover-up and Acts in Bad-Faith..................................24

        f)    SunEdison's CEO Retaliates Against Balwara ..........................................................25

    *VI.Balwara's Relationship with Kobre & Kim* ....................................................................*25*

        a)    Bankruptcy Ring Covertly Arranges for Balwara to Retain K&K .............................25

        b)    Fraudulent Inducement and Wrongful Termination Claim .......................................25

        c)    Bankruptcy Fraud Claim Against SunEdison and TPG .............................................26

    *VII.    SunEdison Files for Chapter 11 Bankruptcy in Bad-Faith* .................................*26*

        a)    SunEdison Rigs the Bankruptcy by Concealing its Relationship with TPG...........26

        b)    SunEdison's CEO Brazenly and Deceptively Requests the Court to Appoint a Bankruptcy Examiner to Falsely Give the Appearance of an Honest Debtor ...........28

    *VIII.    SunEdison Corruptly Retains Bankruptcy Ring Members as Court-Appointed Advisors*.............*29*

a)      McKinsey Actively Conceals its Relationship with TPG ................................................... 29
b)      Bankruptcy Ring Captures Unsecured Creditors Committee ("UCC") ..................................... 30
c)      Weil Retained by UCC but is Conflicted ................................................................ 31
d)      Judge Bernstein Refuses to Recuse Despite Conflict ..................................................... 31
e)      K&K Drops Balwara in Preparation for Bankruptcy Role in SunEdison ................................ 32
f)      SunEdison's CEO Devises Post-Petition Insider Asset-Transfer Schemes ............................ 32
g)      K&K Formally Engaged by UCC ......................................................................... 33
h)      K&K Misrepresents its Relationship with Balwara to the Court ........................................ 34

IX. Bankruptcy Ring Actively Obstructs Balwara's Efforts to Expose their Fraud ..................................... 35

a)      Balwara Approaches K&K Regarding TPG's Role in SunEdison and Concerns of Retaliation ............ 35
b)      K&K Rejects Receiving Balwara's Information ....................................................... 36

X.  Ad Hoc Equity committee Objects to SunEdison's Disclosure Statement ................................................ 36

XI. Plan Confirmed & Observation Window of the 180-Day Revocation for Fraud Period Activiated ...... 37

XII.      Bankruptcy Ring Further Obstructs and Injures Balwara .................................................... 37

a)      Bankruptcy Ring Commits Assault and Theft ........................................................... 37
b)      Balwara Meets with McKinsey Conveying TPG's Role in SunEdison .................................... 38
a)      Secured Lenders that are Members of the Bankruptcy Ring Released from Liability ............................. 38

XIII.      Bankruptcy Ring Engages in Further Retaliation and Cover-up ................................................. 38

a)      Litigation Trustee Retaliates Against Balwara ......................................................... 38
b)      Balwara First-Learns of McKinsey's Role in SunEdison ................................................ 39
c)      McKinsey Preemptively Settles with the Litigation Trustee ............................................. 39
d)      McKinsey Enters into Settlement with the United States Trustee ........................................ 40

XIV.      McKinsey Finally Mentions TPG and Commits More Fraud on the Court .................................. 40

XV.      Litigation Trustee Forced to Dismiss Meritless Claim Against Balwara ..................................... 41

XVI.      Judge Bernstein Denies Jay Alix Request to Examine SunEdison ............................................. 42

XVII.      Litigation Trustee's Hidden Disqualifying Conflict Discovered and Reported to USTP .............. 42

XVIII.      DOJ Launches Criminal Investigation into McKinsey ......................................................... 43

XIX.      SunEdison's CEO Monetizes on Insider Asset-Transfer Scheme +$1 Billion ............................. 43

XX.      U.S. Congressional Inquiry Launched into McKinsey's Opioid and Bankruptcy Advisory .......... 44

XXI.      Balwara Demands Settlement from TPG and McKinsey ...................................................... 45

XXII.      Balwara Discovers K&K's Conflict and Confronts the Law Firm ............................................ 45

XXIII.      SunEdison's CEO Completes Another Insider Asset-Transfer Scheme ....................................... 46

XXIV.      TPG Compensates SunEdison's CEO for Covering-up .................................................... 46

## FRAUD ON THE COURT SCHEME PARTICIPANT ROLES

**Debtor:**        SunEdison, Inc. (f/k/a Monsanto Electronics Materials Company or MEMC)

**The Judge:**    Judge Stuart M. Bernstein

- Presiding over the United States Bankruptcy Court for the Southern District of New York, Judge Bernstein's courtroom was venue-shopped by SunEdison's chapter 11. Judge Bernstein is married to a recently retired senior partner at Weil, Gotshal & Manges LLP with remaining equity in the firm.

**SunEdison's Private Equity Sponsors**: TPG Capital acquired what would become SunEdison for $6.00, in a 2001 leveraged buyout. Under the direction of TPG, SunEdison engaged in controversial transactions leading up to SunEdison's chapter 11 filing. Much of the misconduct comes from SunEdison's illegal cover-up for TPG. The individuals from TPG listed below influenced those transactions and SunEdison's chapter 11.

- TPG Capital and its members
  - James Coulter, Co-Founder and Executive Chairman.
  - Jerome Vascallero, Chief Operating Officer (former McKinsey COO).
  - John Marren, Head of Tech Buyouts and former longtime Chairman of SunEdison board and TPG lead for the SunEdison acquisition in 2001.
  - James Williams, Senior Partner and longtime board directors of SunEdison through bankruptcy.

**SunEdison's CEO**

- Prior to being appointed CEO of what would become SunEdison, Ahmad Chatila was a an executive at Cypress Semiconductor, Inc. Chatila also served as a member of SunEdison's board of directors. It was under his stewardship and oversight of the former board chairman that SunEdison eventually found itself filing for chapter 11. Chatila was also the architect of multiple asset-transfer schemes.

**Disqualified Professionals Retained by SunEdison** to assist it with its reorganization are the following professional firms:

- Skadden, Arps, Slate, Meagher & Flom LLP was hired to serve as SunEdison's lead counsel.

- McKinsey & Company was hired to serve as a restructuring advisor for SunEdison.

- Weil, Gotshal & Manges LLP was hired as counsel to SunEdison's Unsecured Creditors Committee.

4

- **Kobre & Kim LLP** was hired as a special conflicts counsel to SunEdison's Creditors Committee.

- **Drivetrain LLC** was hired to serve as Litigation Trustee.

The 9th Circuit explained that, [a] traditional hub-and-spoke conspiracy has three elements: **(1)** a hub, such as a <u>dominant purchaser</u>; **(2)** spokes, such as competing manufacturers or distributors that enter into <u>vertical agreements</u> with the hub; and **(3)** the rim of the wheel, which consists of <u>horizontal agreements</u> among the spokes.

In this case, the <u>hub</u> is TPG and the <u>spokes</u> are:

1. SunEdison as Debtors and Debtors-in-Possession.
2. McKinsey as Debtors Restructuring Advisor.
3. Skadden as Debtors Counsel.
4. Weil as Unsecured Creditors Counsel.
5. Kobre & Kim as Unsecured Creditors Conflicts Counsel.
6. Drivetrain as Unsecured Creditors Litigation Trustee.
7. Bankruptcy Judge Stuart M. Bernstein, SDNY.
8. Creditors including DIP and secured lenders.

*Vertical agreements (spokes)* with TPG to fix the legal out-come in such a way that TPG evades massive liability in bankruptcy court.

*Horizontal agreements (rim)* between the spokes to engage in cover-up, including giving the impression of an adversarial position, and injuring creditors and witnesses capable of exposing the Hub-and-Spoke Enterprise.







 



Green hydrogen is critical to the rapid decarbonization of hard-to-abate sectors. Ohmium is uniquely positioned to be a leading provider of emissions-free hydrogen technology given its customer-focused, modular solution that enables businesses to achieve an extremely competitive levelized cost of hydrogen (LCOH). We are delighted to partner with experienced clean technology investors like TPG Rise Climate to make large scale green hydrogen production a reality today.

**AHMAD CHATILA**

**Chairman and founding investor of Ohmium**

www.ohmium.com

1.      This complaint is the culmination of nearly a decade-long investigation conducted by the Plaintiff commencing in 2014 to present arising from egregious pre-and-post bankruptcy misconduct that is concealed-in-nature and intended to defame, defraud, and destroy Plaintiff perpetuated by Defendants.

### THE PARTIES

2.      Plaintiff Baraa Shaheen ("**Shaheen**") is the founder and sole shareholder of Balwara, LLC ("**Balwara**"), a **private equity and business advisory** firm formerly headquartered at 101 California Street, Suite 2710, San Francisco, California 94111. Balwara was in the process of launching its first fund targeting to raise **$1billion**.  As a result of unsettled amounts owed to Balwara from SunEdison at time of the bankruptcy, Balwara became an **Unsecured Creditor** and ultimately a beneficiary of the SunEdison Litigation Trust.  Balwara did not wave its right to a jury trial nor submit to the jurisdiction of the bankruptcy court by <u>intentionally</u> not filing a proof of claim. Shaheen and Balwara individually or collectively are referred to as (the "**Plaintiff**").

3.       Defendants (1) SunEdison, Inc. (the "**Debtors**," the "**Debtors-in-Possession**," or "**SunEdison**"); sponsored by their former private equity shareholder, (2) TPG Capital ("**TPG**"); aided and abetted by (3) Skadden, Arps, Slate, Meagher & Flom LLP ("**Skadden**") in the court-appointed role of Counsel to the Debtors;  (4) Weil, Gotshal & Manges LLP ("**Weil**") in the court-appointed role of Counsel to the SunEdison Unsecured Creditors Committee; (5) Kobre & Kim LLP ("**K&K**") in the court-appointed role of Conflicts Counsel to the SunEdison Unsecured Creditors Committee; et al.; (6) McKinsey & Company, Inc. in the court-appointed role of Restructuring Advisor, ("**McKinsey**"); and (7) Drivetrain**,** LLC ("**Drivetrain**") in the court-appointed role of the Litigation Trustee for the SunEdison Bankruptcy Trust; in violation of Title 18 U.S.C. §§ 1961-1964, known as the Racketeer Influenced and Corrupt Organizations Act ("**RICO**") as a vessel for Fraud on the Court.

### NATURE OF THE CASE

4.     Defendants conducted a *Hub-and-Spoke Enterprise*[1], in execution of an elaborate overarching bankruptcy cover-up scheme to fix the legal out-come in favor of TPG in the SunEdison proceedings in such a way that TPG is not held financially liable for SunEdison's insolvency, hereinafter referred to as the ("**TPG Cover-up Scheme**").

5.     The protection afforded by the TPG Cover-up Scheme inspired SunEdison's CEO to devise and execute multiple pre-and-post-petition schemes to fraudulently transfer SunEdison assets and funds.

6.     In a bankruptcy proceeding, the debtor-in-possession is considered an "officer of the court." The debtor-in-possession is not just a fiduciary to its creditors but to the bankruptcy court itself. The debtor is an "officer of the court" because the debtor possesses "a responsibility to act in the best interests of the estate as a whole" and "bears a special responsibility for the proper functioning of the machinery of justice." As an officer of the court, the debtor can perpetrate a fraud on the court, much the same as an attorney.

7.     The deception of investors, vendors, and regulators culminates in the deception of the Court and creditors during the bankruptcy process, such as, **SunEdison**, then the world's largest renewable energy company, which filed for chapter 11 bankruptcy protection on April 21, 2016 in the court room of federal bankruptcy **Judge Stuart M. Bernstein** in the Southern District of New York in what became the largest chapter 11 case of 2016.  SunEdison, TPG, Skadden, Weil, K&K, McKinsey, Drivetrain, and Judge Bernstein, individually or collectively are referred to as (the "***Defendant,***" "***Defendants***," or "***Bankruptcy Ring.***")

8.     Defendants' scheme against Plaintiff began in or around 2013 and continues to the present and includes bankruptcy fraud and fraud on the Court. Defendants' fraudulent concealment and collusion

---

[1] The 9th Circuit has explained that, [a] traditional hub-and-spoke conspiracy has three elements: (1) a hub, such as a dominant purchaser; (2) spokes, such as competing manufacturers or distributors that enter into vertical agreements with the hub; and (3) the rim of the wheel, which consists of horizontal agreements among the spokes.

contributed to Plaintiff's delayed discovery.  Defendants' concealment of their scheme made it impossible for Plaintiff to know the details of many of their unlawful acts.  Details of Defendants scheme that allow pleading with particularity were not sufficiently discovered by Plaintiff until 2023.

       9.      In executing its criminal enterprises, Defendants' crimes have included:

      a.  Fraud on the Court

      b.  Bankruptcy fraud in violation of 18 U.S.C. §§ 152(2), 152(3), and 152(6);

      c.  Bankruptcy fraud in violation of 18 U.S.C. §157;

      d.  Embezzlement against estate in violation of  18 U.S.C. § 153;

      e.  Mail fraud in violation of 18 U.S.C. § 1341;

      f.  Wire fraud in violation of 18 U.S.C. § 1343;

      g.  Obstruction of justice in violation of 18 U.S.C. § 1503(a);

      h.  Witness tampering in violation of 18 U.S.C. §§ 1512(b) and 1512(c);

      i.  Unlawful monetary transactions in violation of 18 U.S.C. §§1956 and 1957(a); and

      j.  Inducement to interstate or foreign travel in violation of 18 U.S.C. § 2314.

      k.  Collusion in violation of the U.S. Federal Antitrust Laws.

      10.     Among other things, Plaintiff seeks damages in excess of **$2 billion**, including punitive damages, for defamation and for this massive, self-concealing, unconscionable Fraud on the Court, and malicious prosecution, by and through, corrupting the integrity of the U.S. Federal Bankruptcy judicial machinery, judges, officers of the court and the United States Trustee Program.