**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Reed Brodsky
Direct: +1 917.574.8200
Fax: +1 212.351.6235
RBrodsky@gibsondunn.com

March 22, 2024

VIA ECF

The Honorable Jesse M. Furman
U.S. District Court, Southern District of New York
40 Foley Square
New York, NY 10007-1312

Re:   *Jay Alix v. McKinsey & Co., Inc., et al.*, No. 18-CV-4141(JMF)

Dear Judge Furman:

Pursuant to Rule 7(C) of Your Honor's Individual Rules and Practices in Civil Cases and the governing Stipulated Protective Order (Dkt. No. 297 § B(9)), AlixPartners, LLP ("AlixPartners" or the "Company") respectfully submits this letter in support of its request to (i) maintain the redactions of the Individual Defendants' and Defendants' memoranda of law in support of their motions for dismissal (Dkt. Nos. 334, 339)[1] and (ii) maintain under seal certain exhibits filed in support of those motions, (Dkt. Nos. 335-5, 10–12, 15 and 338-4–6, 8–10, 13–14).[2]

This Court may maintain information under seal where sealing is necessary to preserve higher values and if the sealing order is narrowly tailored to achieve that aim. *SEC v. Telegram Grp. Inc.*, 2020 WL 3264264, at *1 (S.D.N.Y. June 17, 2020). The reasons, or "higher values," that support sealing information generally include "personal privacy interests, . . . the preservation of attorney-client privilege, and the protection of competitively sensitive business information." *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2023 WL 7126251, at *2 (S.D.N.Y. Oct. 30, 2023). The documents AlixPartners requests the Court maintain under seal are comprised of competitively sensitive business information, including non-public corporate governance documents, sensitive communications, and deposition transcripts with AlixPartners' former-general counsel and a current board member. The unsealing of the below referenced exhibits would subject AlixPartners—a non-public company and Defendants' direct competitor—to competitive injury. The public's interest in this sensitive information is minimal.

      **A.  Corporate Governance Documents and Board Materials (Dkt. Nos. 338-4–6, 10)**

AlixPartners asks that this Court maintain under seal a series of the Company's governing documents and board materials filed at Dkt. Nos. 338-4–6, 10. These include AlixPartners' Investors Agreement, AlixPartners' Limited Liability Partnership Agreement, a Support Agreement, and nonpublic board materials. When considering the risk of "competitive injury,"

---

[1] These documents are available in an unredacted format at Dkt. Nos. 330 and 337, respectively.
[2] These exhibits are available in an unsealed and/or unredacted format at Dkt. Nos. 333-5, 10–12, 15 and Dkt. Nos. 336-4–6, 8–10, 13–14, respectively.

Abu Dhabi · Beijing · Brussels · Century City · Dallas · Denver · Dubai · Frankfurt · Hong Kong · Houston · London · Los Angeles
Munich · New York · Orange County · Palo Alto · Paris · Riyadh · San Francisco · Singapore · Washington, D.C.

1

**GIBSON DUNN**

courts find that when a party is a "private company" it "weighs more heavily against allowing their confidential information to be viewed by the public." *Broidy v. Glob. Risk Advisors LLC*, 2023 WL 5447267, at *3 (S.D.N.Y. Aug. 24, 2023). The need for confidential treatment is heightened when the private company's documents contain "specific business information and strategies . . . may provide valuable insights into a company's current business practices that a competitor would seek to exploit." *Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 511 (S.D.N.Y. 2015) (internal quotation marks omitted). The particular corporate governance documents at-issue here implicate AlixPartners' current governance structure. They also detail competitive strategy, proprietary business information, and the financial underpinnings of AlixPartners. For example, Dkt No. 338-4 identifies investors' covenants, past agreements entered between them, details its board of directors' elections process, details its investors' veto and approval rights, states how the contract will terminate, and defines myriad contractual terms—all of which are the output of confidential negotiations between and among the Company's private stakeholders.

Further, the public would not expect to have access to information contained in these sensitive documents—particularly information that is not germane to the underlying dispute. *Fossil Grp., Inc. v. Angel Seller LLC*, 2021 WL 8168871, at *3 (E.D.N.Y. Nov. 10, 2021) (approving of sealing of confidential information "not germane to this case" and information that would be "highly valuable" to "business competitors"); *Telegram Grp. Inc.*, 2020 WL 3264264, at *3 ("Public disclosure of the non-parties' identities and specific identifiable information reveals private investment decisions while providing little value to the monitoring of the federal courts. Protecting such private financial dealings is a recognized and protectable privacy interest."). Here, Defendants cite to only a handful of sections of AlixPartners' highly confidential governance documents and investment documents in their brief. Dkt. No. 334 at 3, 6, 22 (citing Dkt. Nos. 338-4–6, 10). And the reference to the privately held board meeting agenda, Dkt. No. 338-6, is not discussed with any substance at all, *see* Dkt. No. 334 at 3 n.3. Defendants' minimal use of these documents in their motion reveal that the full breadth of these governance documents is insignificant to the narrow Rule 17 issue before the Court. Defendants had no reason to file the entirety of these documents, presenting the question of why Defendants declined to file excerpts instead of their competitors' competitively sensitive information.

The Court should consider sealing these documents for the additional reason that non-party investors' privacy interest would be harmed by disclosure. *See Dodona I, LLC v. Goldman, Sachs & Co.*, 119 F. Supp. 3d 152, 156 (S.D.N.Y. 2015) (finding the presumption of public disclosure overcome and approving redactions of customers' internal corporate documents and documents containing the identities of the parties' and affected third-parties' customers, as well as information concerning their trading strategies, objectives and transactions); *Iacovacci v. Brevet Holdings, LLC*, 2022 WL 101907, at *2 (S.D.N.Y. Jan. 11, 2022) (maintaining under seal document containing the names of defendant's "past and/or prospective clients, including past and/or prospective investors and transaction counterparties"). Each document (Dkt Nos. 338-4–6 and 10) on its face contains private information about AlixPartners' non-party investors, AlixPartners and its' parent company's board memberships, its bargained-for

**GIBSON DUNN**

contractual language, and other private governance information. *See, e.g.*, 338-4 Recitals (prior investor agreements) §§ 1.1–2 (director election and removal process), 3.1–5 (outlining AlixPartners' and its investors covenants); 338-5 Recitals (prior board resolutions) §§ 3, 4.4 (the powers of the partnership and partners), 7 (management structure of the partnership), 8 (insurance and exculpation rights), 13 (representations and warranties of each partner); 338-10 (bargained-for merger agreement provisions labeled as strictly confidential by original parties). The public could not reasonably expect to gain access to documents mapping AlixPartners' corporate and financial foundation because of a mere challenge to the assignment of the claims brought in this case. Accordingly, the privacy interests of AlixPartners and the non-party investors outweigh the public's expectation of access.

### B. Confidential Company Communications (Dkt. Nos. 335-11–12, 15; 338-13–14)

The confidential communications filed under seal include highly sensitive correspondence with AlixPartners' then-general counsel, its CEO, and its board members. These sensitive communications at the highest level of this non-public Company should remain under seal. Dkt. No. 335-15, for instance, contains draft provisions of contract negotiation that reveal AlixPartners' business and legal strategies. The other documents that Alix asks this Court to maintain under seal pursuant to Dkt. No. 341, are similarly sensitive, and should remain under seal for the reasons asserted in Alix's letter.

### C. Deposition Transcript Excerpts (Dkt. Nos. 335-5, 10; 338-8–9):

Defendants have filed dozens of pages of deposition transcript testimony in support of their motions. These pages are replete with references to private discussions between AlixPartners' board members (including what was said during the course of board meetings), board materials, AlixPartners' internal analyses, the Company's internal strategies, the relationship between the Company and some of its largest stakeholders, and AlixPartners' chairman of the board's duty of loyalty. Moreover, AlixPartners relied on the protection of its confidentiality designation when it put its general counsel up for a deposition. *See SEC v. TheStreet.com*, 273 F.3d 222, 229 (2d Cir. 2001) ("It is . . . presumptively unfair for courts to modify protective orders which assure confidentiality and upon which the parties have reasonably relied.").

\*\*\*

AlixPartners appreciates that Your Honor directed these materials remain under temporary seal. Dkt. No. 340. The Company respectfully submits this letter-motion seeking to ensure the documents Defendants filed on March 19, 2024 remain sealed throughout the course of this litigation.

**GIBSON DUNN**

Respectfully submitted,

*/s/ Reed Brodsky*

Reed Brodsky

cc: All counsel of record (via ECF)

Pursuant to the Court's Order at ECF No. 340, the materials that are the subject of Alix and AlixPartners' letters, ECF Nos. 341 & 342, will remain sealed temporarily. The Court will assess whether to keep the documents at issue sealed or redacted when resolving the underlying motions. The Clerk of Court is directed to terminate ECF No. 342.

SO ORDERED.

March 25, 2024