# CADWALADER

Cadwalader, Wickersham & Taft LLP
200 Liberty Street, New York, NY 10281
Tel +1 212 504 6000  Fax +1 212 504 6666
www.cadwalader.com

April 30, 2024

**BY ECF**
The Honorable Jesse M. Furman
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:   *Jay Alix v. McKinsey & Co., Inc. et al.*, 18-CV-04141 (JMF)

Dear Judge Furman:

Defendants are stonewalling. Having sought and obtained one-sided, expedited Rule 17 discovery from Alix and AlixPartners, Defendants themselves have yet to produce a single document in this action and outright refuse to answer a single interrogatory. Their objections fly in the face of the decisions of this Court and the Second Circuit, both of which held that Alix's claims merit discovery. The parties have met and conferred and are at an impasse on the issues discussed herein. Alix therefore moves to compel pursuant to Your Honor's Individual Rule 3.F.

## I.     MIO's Documents Are Within McKinsey's Control

Alix requests documents evidencing McKinsey's Connections to Interested Parties resulting from investments by its in-house investment firm, McKinsey Investment Office, or "MIO."[1] As the Court has noted, Alix "contends that [McKinsey's] declarations were fraudulent," including because "McKinsey … concealed the existence of McKinsey's investment entity, MIO, and its corresponding connections." ECF 239 at 28. The Court held that "[f]or several bankruptcies, Alix plausibly alleges that McKinsey RTS's omission of the connections of its investment arm, MIO, was misleading." *Id.* at 31. For example, Alix plausibly alleged McKinsey's omission of MIO's $600 million investment in BlackRock was misleading in four bankruptcies where McKinsey RTS was hired and BlackRock was an Interested Party. *Id.*; *see* SAC ¶ 141.

MIO is McKinsey's wholly-owned subsidiary, with no outside clients, and its board is appointed and controlled by McKinsey and its consultants.[2] Yet, for months, Defendants have refused to

---

[1] *See, e.g.*, Ex. 1 (Alix's 1st RFP) at Requests 63, 67-69, 85, 89, 159-60, 190-91, 200; Ex. 2 (Alix's 2nd RFP) at Request 18; *see also* Ex. 3 (Defs. 1st RFP Resp.); Ex. 4 (Defs. 2nd RFP Resp.).

[2] *See* Ex. 5 *ANR* Dkt. 4152, at 1-2, ¶ 3 (Lipscomb Decl.). Defendant Jon Garcia, a McKinsey consultant and the President of RTS, sat on the MIO board for over a decade. Ex. 6 (2/7/2020-AM Tr. at 90:10-91:24); Ex. 5 *ANR* Dkt. 4152, at 2-3, ¶ 8 (Lipscomb Decl.). MIO's Board has also included McKinsey Senior Partners, including Jean-Christophe Mieszala (McKinsey Chief Risk Officer), Ivo Bozon (a McKinsey consultant) has served as the head of MIO's investment committee, and Vik Maholtra (also a McKinsey consultant) has served as chair of the MIO board. Ex. 6 (2/7/2020 Tr. at 84:1-10, 83:20-25, 88:25-91:5); Ex. 7 (Barton Tr. at 32:4-8); *see also* Ex. 8 (2/28/2020-AM Tr. at 69:4-8) (McKinsey consultants comprised majority of MIO Board in 2018-19). MIO's board members have access to MIO investments. Ex. 8 (2/28/2020-AM Tr. at 100:2-5); Ex. 6 (2/7/2020-AM Tr. at 94:9-21); Ex. 5 *ANR* Dkt. 4152, at 3, ¶ 11 (Lipscomb Decl.).

**Sean F. O'Shea**  Tel +1 212 504-5700   Fax +1 212 504-6666   sean.o'shea@cwt.com

April 30, 2024

produce any MIO-related discovery and argued that Alix was required to jump through hoops and issue a nonparty subpoena to MIO to obtain its records. Their position is contrary to settled law: "a parent corporation has a sufficient degree of ownership and control over a wholly-owned subsidiary that it must be deemed to have control over documents located with that subsidiary." *Dietrich v. Bauer*, 2000 WL 1171132, at *3 (S.D.N.Y. Aug. 16, 2000), *on reconsideration in part,* 198 F.R.D. 397 (S.D.N.Y. 2001) (concluding the same).

Notably, the U.S. Trustee has already reprimanded McKinsey for its refusal to disclose MIO Connections based on a fictional "wall," finding that "McKinsey's repeated characterization in 2016 of MIO's status as a 'blind trust' was inaccurate." Ex. 9 (*ANR* Dkt. 4164 at 1). In 2016, after Mar-Bow filed a motion to compel in *ANR*, Judge Huennekens ordered disclosure of MIO's Connections *in camera*. Ex. 10 (*ANR* Dkt. 2895 at 2). Despite claims of separateness, McKinsey made MIO disclosures within five days of that order. Ex. 11 (*ANR* Dkt. 4195 at 2-3, 19-20). Likewise, McKinsey belatedly decided to make some (limited) MIO disclosures in *Westmoreland* in response to negative media coverage.[3] More recently, in November 2021, the SEC noted the absence of separation between MIO and its parent, finding that "McKinsey partners serving on the [MIO] Investments Committee, including, through June 2017, the President of McKinsey RTS, possessed and had access to McKinsey Client MNPI [material non-public information] by way of their various roles at McKinsey" and that, "[a]s McKinsey consultants, Investments Committee members were routinely privy to MNPI relating to, for example," "planned bankruptcy filings."[4] Given McKinsey's demonstrated control over MIO, it cannot rely on MIO's fictitious separateness to frustrate discovery. *See, e.g., Hunter Douglas, Inc. v. Comfortex Corp.*, 1999 WL 14007, at *3 (S.D.N.Y. Jan. 11, 1999) (where "the affiliate can obtain documents from its foreign parent to assist itself in litigation, it must produce them for discovery purposes").

Perhaps recognizing the futility of its position, at 8:29 pm last night, McKinsey belatedly attempted to forestall this motion with a transparent stall tactic: McKinsey proposed to "work with MIO [its wholly owned subsidiary] to respond to the MIO-related document requests," stating counsel would "endeavor" to "update McKinsey's responses and objections" "within 30 days." Ex. 14. McKinsey's change of heart is too little too late. Putting aside the fact that McKinsey has already had months[5] to "work with MIO" (as required under the Rules), McKinsey *still* has not agreed to

---

[3] In *Westmoreland*, testimony revealed that the limited MIO disclosures in the Krivin Declaration were the result of a change of heart by McKinsey based on "media coverage." Ex. 8 (2/28/2020-AM Tr. at 59:14-61:25) (MIO board approved the disclosures based on a "request from McKinsey."). In fact, Vik Maholtra, a McKinsey consultant, was the MIO Board chair who made the decision. *Id.* And Casey Lipscomb—MIO's General Counsel—admitted that nothing changed to cause this reversal between the fall of 2018 and 2019, save for continued "media coverage." *Id.* at 59:14-61:25, 120:22-121:1. Moreover, Jean Molino, McKinsey's former General Counsel, testified, McKinsey's "Collaboration Policy" allows MIO "to make disclosures required by applicable law or in accordance with regulatory or judicial requirements." Ex. 12 (2/26/2020-PM Tr. at 9:5-12:9); *see also* Ex. 13 (2/26/2020-AM Tr. at 123:1-12).

[4] *In re MIO Partners, Inc.*, SEC Release No. 5912, ¶ 17 (Nov. 19, 2021), *available at* https://www.sec.gov/litigation/admin/2021/ia-5912.pdf. Notably, "[t]he Collaboration Policy included a specific carve out for Board and Investments Committee members that situated them above the protective wall and did not prohibit access to MIO portfolio investments." *Id.* ¶ 30.

[5] Alix served his initial requests on December 19, 2023. McKinsey served responses on February 19, 2024, pursuant to an extension. Alix sent Defendants a detailed deficiency letter on March 22, 2024. On April 5, 2024, Defendants

Page 2

April 30, 2024

produce anything. To the contrary, McKinsey's position has all the hallmarks of gamesmanship, and promises only more delay. For example, McKinsey claims it needs more time to "coordinate with MIO's counsel" "because MIO counsel is most knowledgeable about MIO, its documents, and its client." Ex. 14.[6] But McKinsey (MIO's parent) is well aware of the location and nature of the documents sought, including based on extensive testimony during the *Westmoreland* trial.[7]

Alix respectfully submits that the Court should order discovery on this central issue to proceed immediately. Alternatively, and at a minimum, if McKinsey is committed to amending its discovery responses and *agreeing to actually produce documents*, it should be ordered to amend within three business days, given that the requests were served over four months ago.

### II.     Alix Did Not Issue More Than 25 Interrogatories

Defendants refuse to respond to *any* of Plaintiff's seven interrogatories. Ex. 16 at 2-3 (Defs. Interrogatory Resp.). Defendants argue that Plaintiff exceeded the 25-interrogatory limit, primarily because he seeks information as to each of the 14 underlying Bankruptcies in Interrogatory Nos. 2 and 3. Defendants' objection is another disingenuous stall tactic—Defendants' interrogatories *also* seek information about all 14 Bankruptcies, and, as the Court knows, Alix has responded. *See, e.g.*, ECF 336-17 at 4 (responding to interrogatory seeking information for "any of the Bankruptcies"). If Alix's interrogatories exceed 25, so do Defendants', and the proper course would be for the Court to grant leave to exceed the limit given the scope of the case. *See Highland CDO Opportunity Master Fund, L.P. v. Citibank, N.A.*, 2014 WL 6980524, at *1 (S.D.N.Y. Dec. 4, 2014) ("[E]ven if … each counted as 23 discrete interrogatories for purposes of Rule 33, we would grant leave to serve these reasonable interrogatories under Rule 33(a)(1).").

In any case, Defendants' argument is meritless. Interrogatory Nos. 2 and 3 each pose a single question. Interrogatory No. 2 asks about persons with knowledge of McKinsey's involvement in the Bankruptcies, and Interrogatory No. 3 asks for persons with knowledge of McKinsey's Connections to Interested Parties. Ex. 17 (Alix's Interrogatories). The fact that Defendants must respond for all Bankruptcies does not transform each interrogatory into 14. *See, e.g.*, *Codename Enterprises, Inc. v. Fremantlemedia N. Am., Inc.*, 2017 WL 11567520, at *2 (S.D.N.Y. Mar. 9, 2017) (an interrogatory asking for the answer to be disaggregated by type of customer should be counted as a single interrogatory despite including 18 related subparts, (a) through (r)).[8]

---

sent an unequivocal response stating that they would not produce MIO documents. And even when the parties met and conferred telephonically on April 25, 2024, Defendants did not change position.

[6] Notably, the two entities have previously shared counsel. For example, Casey Lipscomb simultaneously worked as MIO's General Counsel and McKinsey's Associate General Counsel for some time. Ex. 15. (Lipscomb LinkedIn).

[7] For example, Alix seeks information concerning MIO investment connections that is available from several databases that McKinsey refuses to search. *See* Ex. 3 (Defs. 1st RFP Resp.) at Response 63. Testimony in *Westmoreland* established that McKinsey failed to search its: (i) Advent Geneva database for securities in separately managed accounts, Ex. 8 (2/28/2020-AM Tr. at 70:13-22, 134:9-16); (ii) Manager Portal for information about third-party funds and managers, Ex. 8 (2/28/2020-AM Tr. at 71:17-72:4); Ex. 6 (2/7/2020-AM Tr. at 70:20-73:4); or (iii) Compliance Science database for information about securities held by employees, Ex. 8 (2/28/2020-AM Tr. at 75:18-76:4).

[8] *See also* 8B Wright & Miller, Fed. Prac. & Pro. § 2168.1, at 39-40 (2010) ("an interrogatory containing subparts directed at eliciting details concerning a common theme should be considered a single question").

April 30, 2024

Respectfully submitted,

<u>s/   Sean O'Shea</u>
Sean F. O'Shea
Michael E. Petrella
Amanda L. Devereux
Matthew M. Karlan
Joshua P. Arnold
CADWALADER, WICKERSHAM & TAFT LLP
200 Liberty Street
New York, New York 10281
(212) 504-6000

*Counsel for Plaintiff Jay Alix*